IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CT-3270-D

TRACEY EDWARDS,                          )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )          **ORDER**
                                         )
ERIK HOOKS, et al.,                      )
                                         )
              Defendants.                )

This matter comes before the court on Plaintiff's motion to compel, [DE-67], to which

Defendants filed a response, [DE-74], and Plaintiff filed a reply with leave of court, [DE-76-1].

The parties also filed a joint discovery status report after court-ordered meet and confer efforts.

[DE-87]. For the reasons that follow, the motion to compel is allowed in part and denied in part.

I.     **Standard of Review**

The general rule regarding the scope of discovery is found in Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy under this rule has been broadly construed to encompass any possibility that the

information sought may be relevant to the claim or defense of any party." *Equal Emp. Opportunity*

*Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13,

2007) (citation omitted); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240

(E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that

bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory or to produce or make available for inspection requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). The party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted).

## II.    Discussion

### a.    Background

This case concerns the propriety of shackling Plaintiff, a pregnant inmate at the North Carolina Correctional Institution for Women ("NCCIW") at various times during her transport to the hospital to give birth, hospital stay, transport back to the institution, and post-partum recuperation period, as well as the post-partum medical treatment Plaintiff received at NCCIW. Pl.'s Mem. [DE-68] at 2.[1] Plaintiff served discovery on Defendant Edwards[2] on April 14, 2022,

---

[1] The page number referenced is from the CM/ECF footer where, as here, it differs from the document's internal page number.

[2] Anthony Perry, the current warden, was substituted for Edwards after discovery was served. [DE-85]. For ease of reference and consistent with the discovery requests and the parties' briefing, this order refers to Defendant Edwards throughout.

on Defendants Amos and Junker on June 2, and on Defendants Witherspoon, Buffaloe, and Alexander on June 14. *Id.* at 3–4. No responses were timely served. *Id.* Defendant Edwards served untimely responses on May 27, and agreed to supplement in response to Plaintiff's notice of deficiency but did not complete supplementation until August 5, causing a deposition to be postponed. *Id.* Plaintiff contends the supplemental responses remain inadequate. *Id.* at 4. The other Defendants failed to respond to the discovery requests. *Id.* Plaintiff filed the instant motion to compel responses to the discovery requests and for sanctions on August 23, 2022, after Defendants' counsel declined or failed to respond to multiple meet and confer requests. *Id.* at 4.

Defendants responded to the motion to compel on September 13, 2022, asserting that Defendant Edwards provided supplemental responses and produced all documents within her possession, custody, and control; responses have since been provided for all propounded discovery requests except the interrogatories to Defendant Buffaloe, which counsel anticipated providing shortly; and the delay in responding to discovery was due to counsel's heavy workload and difficulties obtaining documents from DPS. Defs.' Resp. [DE-74] at 1–5.

Plaintiff filed a reply on September 21, 2022, stating that Defendant Edwards did not provide promised supplementation, the other Defendants first provided unverified and inadequate responses and later provided deficient verifications, and Defendant Buffaloe's interrogatory responses remained outstanding. Pl.'s Reply [DE-76-1] at 1–2.

After the court ordered the parties to meet and confer in an attempt to resolve the issues presented by Plaintiff's motion, [DE-82], the parties filed a joint status report on November 7, indicating that Defendant Edwards has not produced any supplemental discovery, the other Defendants made a supplemental production on September 12, and Defendants produced one additional document on November 4. Status Rpt. [DE-87] at 1.

3

### b. Outstanding Undisputed Discovery Requests

Plaintiff asks the court to order Defendants to respond by a date certain to the following discovery requests, which Plaintiffs assert Defendants have indicated they intend to respond to, or provide supplement responses to, but have not yet done so: Interrogatories 2, 3, and 4, and RFPs 3, 4, 5, 7, 8, 9, 10, 11, and 12 to Amos; Interrogatories 2, 3, and 4, and RFPs 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 22, and 23 to Junker; All Interrogatories, and RFPs 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 22, and 23 to Buffaloe; Interrogatories 2, 3, 5, and 10, and RFPs 3, 4, 5, 6, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 24, 26, and 27 to Witherspoon; Interrogatories 2, 3, and 4, and RFPs 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 24 to Alexander; and Interrogatories 7, 8, 9, and 10, and RFPs 3, 4, 7, 10, 12, 14, 16, 25, and 26 to Edwards. Status Rpt. [DE-87-2] at 2–4. Defendants' position in the status report incorporates their response to the motion to compel, [DE-74], and Defendants' November 4, 2022 letter in response to Plaintiff's deficiency letter, [DE-87-2]. Status Rpt. [DE-87] at 5.

#### 1. Interrogatories and RFPs Defendants Agreed to Supplement

Defendants indicated in the November 4 letter to Plaintiff's counsel that certain information had been requested and that supplementation would be forthcoming on the following Interrogatories and RFPs: RFPs 3, 4, 5, 7, 8, 11, 12, 13, 14, 15, 16, 17, 22, and 23 to Buffaloe; Interrogatories 3, 5, and 10, and RFPs 3, 4, 5, 6, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 24, 26, and 27 to Witherspoon; Interrogatory 4, and RFPs 3, 4, 5, 7, 8, 10, 11, and 12 to Amos; Interrogatory 4, and RFPs 3, 4, 5, 7, 8, 11, 12, 13, 14, 15, 16, 17, 22, and 23 to Junker; and Interrogatory 4, and RFPs 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 24 to Alexander. Status Rpt. [DE-87-2] at 3-4. Accordingly, the motion to compel as to these requests is allowed, and Defendants shall provide supplemental responses to these requests within thirty (30) days of the date of this order.

4

## 2.  Interrogatories to Buffaloe

Plaintiff served discovery requests on Buffaloe on June 14, 2022.  Pl.'s Mem. [DE-68] at 4.  Defendants acknowledged in their response to the motion to compel on September 13, 2022, that Buffaloe had not responded to the interrogatories, but stated that the responses could be provided shortly.  Defs.' Resp. [DE-74] at 5.  Defendants generally cited the heavy workload of their counsel and the NCDPS General Counsel's Office as causing the delay in responding to Plaintiff's discovery.  *Id.*  As of the filing of the status report nearly two months later on November 7, 2022, Buffaloe had still not responded to Plaintiff's interrogatories.  Status Rpt. [DE-87] at 4 n.5.  Accordingly, the motion to compel is allowed as to the Buffaloe Interrogatories.  Because Buffaloe did not respond to Plaintiff's interrogatories in a timely manner, any objections to the relevance or scope of the requests are waived, and the court cannot find that the stated cause of a heavy workload establishes good cause to excuse the failure in light of length of  delay and total failure to respond.  *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").  However, the court will permit Buffaloe to assert any valid claim of privilege in the responses to the interrogatories, which must be expressly asserted in response to the particular discovery request involved and served with a privilege log in conformance with Fed. R. Civ. P. 26(b)(5)(A).

## 3.  Interrogatories 2 and 3, and RFP 9

In the status report, Plaintiff lists Interrogatories 2 and 3 to Amos, Junker, and Alexander, Interrogatory 2 to Witherspoon, and RFP 9 to Buffaloe, Amos, and Junker as undisputed discovery requests that Defendants agreed to supplement, [DE-87] at 4, but Plaintiff's counsel's October 18, 2022 deficiency letter does not request supplementation of these requests, [DE-87-1] at 5–10, and

5

defense counsel's letter in response likewise does not address them, [DE-87-2] at 3–4. Thus, the status of these requests is not clear.

Interrogatory 2 sought to identify persons with knowledge or information regarding the allegations of the complaint.

> Identify all persons who have or are believed to have knowledge and/or information relating to the allegations in the Complaint and for each such person, summarize the information you believe to be known to that person, and state whether you have taken any written or recorded statements from that person regarding the Lawsuit. Your Answer should include any individual who participated in the decision to implement policies and/or practices regarding shackling, provision of MOUD, and provision of other psychotropic medications to incarcerated people who are pregnant, in labor, or post-partum from January 1, 2017, to present.

[DE-76-3] at 4; [DE-76-5] at 4; [DE-76-6] at 4; [DE-76-7] at 4. Witherspoon responded that "[t]he policies were in place upon my arrival to NCCIW, 11.2018." [DE-76-3] at 4. Amos responded that "[t]he named correctional officers that transported or provided security for offender Edwards while she was admitted to the hospital. The other named Defendants would have information related to medical and correctional policies related to pregnant offenders." [DE-76-5] at 4. Junker responded, "No one beyond those listed in the lawsuit. I have not discussed the case or taken any statements from anyone regarding this case." [DE-76-6] at 4. Finally, Alexander responded,

> It was my decision as the head of the healthcare operation and the Medical Director Dr. Amos' decision from a clinician standpoint with the approval of the Facility Administrator at the time, Warden Benita Witherspoon to bring an existing program that was provided by Southlight, prior to December 1, 2018, into the facility for the safety of the staff, offenders, fetus and to be better stewards of the tax payers' resources. It was about safety and security and relieving the strain on our custody staff and medical trips.

[DE-76-7] at 4. Plaintiff asserted in the reply that these answers were insufficient, [DE-76-1] at 5, and Defendants make no counter argument. The court agrees that the responses are incomplete and/or it is not apparent that Defendants conducted a reasonable investigation in order to fully answer the interrogatory. *See Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-

6

FL, 2021 WL 3864476, at \*9 (E.D.N.C. Aug. 30, 2021) ("[P]arties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests.") (quoting *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-00282-F, 2013 WL 5705601, at \*4 (E.D.N.C. Oct. 18, 2013)). Accordingly, the motion to compel is allowed as to Interrogatory 2 to Witherspoon, Amos, Junker, and Alexander, and to the extent they have not already done so, they shall provide a supplemental response to this request within thirty (30) days of the date of this order or certify that after a reasonable investigation they have no further response.

Interrogatory 3 sought to identify past lawsuits related to medical care against Defendants or NCCIW.

> Identify every lawsuit filed against You or NCCIW within the past five years related to medical care. For each lawsuit, please identify the following:
>
> a. Case name and number;
> b. Jurisdiction in which the case was filed;
> c. Whether the case is pending or closed;
> d. If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);
> e. If the case was tried to verdict, a summary of the verdict including any damages award; and
> f. If the case was settled or resolved through mediation or arbitration, a summary of the resolution including any monetary payment.

[DE-76-5] at 4–5; [DE-76-6] at 4; [DE-76-7] at 4. Amos responded, "I know of one filing in November of 2018 where I was included as Northern Kentucky regional medical director. I am not in a position to know of any filed against NCCIW," and he provided details as to the one lawsuit. [DE-76-5] at 4–5. Junker responded, "I do not maintain a record of past lawsuits in which I was named. There have been no lawsuits naming me as the solo defendant. There have been no rulings or judgements found against me in my personal or professional capacity." [DE-76-6] at 4. Alexander responded, "I am not aware of any other lawsuits." [DE-76-7] at 4. As with

7

Interrogatory 2, it is not apparent that Defendants conducted a reasonable investigation in order to fully answer the interrogatory. Accordingly, the motion to compel is allowed as to Interrogatory 3 to Amos, Junker, and Alexander, and to the extent they have not already done so, they shall provide a supplemental response to this request within thirty (30) days of the date of this order or certify that after a reasonable investigation they have no further response.

RFP 9 sought disciplinary reports, complaints, investigations, or other reprimands against Officer Defendants and as to any NCCIW or NCDPS employee related to the provision or denial of psychotropic medications from January 1, 2017 up to and including June 4, 2021. [DE-76-4] at 5; [DE-76-5] at 12; [DE-76-6] at 11-12. Buffaloe responded that "all documents responsive to this request were produced in response to Defendant Edwards' Requests for the Production of Documents." [DE-76-4] at 6. Amos and Junker responded similarly, that "all documents responsive to this request were produced in response to Defendant Edwards' Requests for the Production of Documents" and that they had no further responsive documents. [DE-76-5] at 12; [DE-76-6] at 11-12. In the reply, Plaintiff indicates generally that, other than one article, Defendants did not produce any documents and referred back to Edwards' inadequate document production. Pl.'s Reply [DE-76-1]. Accordingly, the motion to compel is allowed as to RFP 9 to Buffaloe, Amos, and Junker, and to the extent all responsive documents have not been produced by Edwards and these Defendants, they shall provide a supplemental response to this request within thirty (30) days of the date of this order or certify that after a reasonable investigation they have no further response.

### 4. Undisputed Requests to Edwards

In the status report, Plaintiff characterized Interrogatories 7, 8, 9, and 10, and RFPs 3, 4, 7, 10, 12, 14, 16, 25, and 26 to Edwards as undisputed. Status Rpt. [DE-87-2] at 2–4. As noted

above, Defendants' position in the status report simply incorporates their response to the motion to compel, [DE-74], and Defendants' November 4, 2022 letter in response to Plaintiff's deficiency letter, [DE-87-2]. Defendants response to the motion to compel asserted that Edwards provided supplemental responses and produced all documents within her possession, custody, and control, Defs.' Resp. [DE-74] at 2, and the November 4 letter does not address Edwards' responses. However, Plaintiff's reply indicates that Edwards had not in fact provided further promised supplemental discovery, and Plaintiff cites as one example that Edwards had yet to produce every version of the responsive policies. Pl.'s Reply [DE-76-1] at 3–4. Defendants did not substantively address any of the arguments put forth by Plaintiff with respect to Interrogatories 7, 8, 9, and 10, and RFPs 3, 4, 7, 10, 12, 14, 16, 25, and 26. Accordingly, Edwards shall provide supplemental responses to these requests within thirty (30) days of the date of this order or certify that after a reasonable investigation there is no further response.

### c. Outstanding Disputed Discovery Requests

The parties disagree as to whether further responses are necessary for the following requests: Interrogatories 5, 6, 7, 8, 10, and 11, and RFPs 1, 2, and 6 to Amos; Interrogatories 5, 6, 8, 9, and 10, and RFPs 1, 2, 6, 18, and 19 to Junker; RFPs 1, 2, 6, 18, and 19 to Buffaloe; Interrogatories 6, 7, 8, 9, and 11, and RFPs 1, 2, 7, 11, 20, and 21 to Witherspoon; Interrogatories 5, 6, 8, 9, and 10, and RFPs 1, 2, 6, 17, and 18 to Alexander; and Interrogatories 12 and 14, and RFPs 2, 6, 8, 9, 15, 17, and 18 to Edwards. Status Rpt. [DE-87] at 2. All of these discovery requests seek information related to Plaintiff's medical condition and treatment or related policies and procedures. Defendants maintain that all medical records have been provided, and they have no additional response. [DE-87-2] at 3. Plaintiff asserts that even if all medical records have been produced, the responses fail to fully address certain specific requests, including the factual basis

9

for certain decisions and communications regarding institutional policies. Status Rpt. [DE-87] at 2.

### 1. Interrogatory 5 to Amos, Junker, and Alexander and Interrogatory 6 to Witherspoon

Interrogatory 5 to Amos, Junker, and Alexander and Interrogatory 6 to Witherspoon requests that each "[d]escribe the basis for the determination Plaintiff should be administered Suboxone, or any other MOUD, at NCCIW in 2019. Your response should include but not be limited to any factual, clinical, or medical assessment or evaluation relied upon in making the determination." [DE-76-3] at 5; [DE-76-5] at 5; [DE-76-6] at 5; [DE-76-7] at 5. Witherspoon, the Warden of the institution at the time of the events, responded that "NCCIW's medical Department will have this information documented." [DE-76-3] at 5. Amos, the Medical Director of the institution, responded with a general statement that "New Intakes who are pregnant and have a history of using opiates during pregnancy are referred for MAT with the express purpose of mitigating fetal loss/injury from withdrawal before delivery." [DE-76-5] at 5. Junker, the Director of Health and Wellness for DPS, responded that he lacked facility-based knowledge, was not a doctor, and was not involved in medical decisions. [DE-76-6] at 5. Alexander, the Healthcare Facility Treatment Administrator at the institution, also responded generally that "[a]ll prescription medications including controlled substances including Suboxone are based on the consulting and/or attending provider's order based on clinical findings after an examination." [DE-76-7] at 5. The court finds Defendants' answers, coupled with Plaintiff's medical records, are sufficient, and Plaintiff will have an opportunity to further question Defendants regarding their responses through depositions.

10

### 2. Interrogatory 6 to Amos, Junker, and Alexander, Interrogatory 7 to Witherspoon, and Interrogatory 12 to Edwards

These Interrogatories ask Defendants to "[d]escribe the basis for the determination Plaintiff should no longer be administered Suboxone, or any other MOUD, at NCCIW post-partum. Your response should include but not be limited to any factual, clinical, or medical assessment or evaluation relied upon in making the determination." [DE-67-1] at 3; [DE-76-3] at 6; [DE-76-5] at 5; [DE-76-6] at 5; [DE-76-7] at 5. Edwards responded that "NCCIW is not licensed by the NC DHHS, the DEA, or SAMSJA as a substance abuse treatment facility. NCCIW is authorized to use Methadone and Suboxone on a narrow basis, secondarily as a part of the treatment plan for the primary medical condition (pregnancy) to mitigate any adverse conditions (spontaneous abortion) related to the primary medical condition. After delivery, use of Methadone and Suboxone are no longer authorized." [DE-67-1] at 4. Witherspoon responded that "NCCIW's medical Department will have this information documented." [DE-76-3] at 6. Amos responded that "[t]he determination was based on the fact that our approvals for MAT were based on prenatal preventive healthcare as a part of the primary health function of those housed at NCCIW." [DE-76-5] at 5. Junker responded, "I do not have that level of facility-based knowledge." [DE-76-6] at 5. Alexander responded that "[t]he facility is not licensed by the DEA, SAMHSA, the NC Board of Pharmacy, the State Opioid Treatment Authorities, or NC DHHS, as a substance use treatment facility. We had approval for MOUD for pregnant offenders via SAMHSA as long as it was secondary to the primary medical condition, which was pregnancy. Continuing to dose postpartum would have been tantamount to breaking the law and putting the entire healthcare operation in jeopardy." [DE-76-7] at 5. The court finds Defendants' answers, coupled with Plaintiff's medical records, are sufficient.

### 3. Interrogatory 7 to Amos

Interrogatory 7 to Amos stated, "Describe the basis for the determination Plaintiff should be administered any psychotropic medication during her incarceration in the custody of NCCIW. Your response should include but not be limited to any factual, clinical, or medical assessment or evaluation relied upon in making the determination." [DE-76-5] at 6. Amos responded, "Just as in the non-incarcerated community, that determination is based on the evaluations of Mental Health and Psychiatry specialists." *Id.* Defendants have also provided Plaintiff's medical records, and the response, coupled with those records, is sufficient.

### 4. Interrogatory 8 to Witherspoon

Interrogatory 8 asks Witherspoon to "[d]escribe in detail the basis for the decision to keep Plaintiff in the medical unit following her discharge from the Robin Unit in January 2020." [DE-76-3] at 6. Witherspoon responded that "NCCIW's medical Department will have this information documented." *Id.* Given that Defendants have provided Plaintiff's medical records, the court finds this response sufficient.

### 5. Interrogatory 8 to Amos, Interrogatory 9 to Witherspoon, and Interrogatory 14 to Edwards

Interrogatory 9 and Interrogatory 14 ask Witherspoon and Edwards, respectively, to "[d]escribe in detail the basis for the decision in January 2020 to no longer prescribe the Plaintiff previously prescribed psychotropic medication. Your response should include but not be limited to any factual, clinical, or medical assessment or evaluation relied upon in making the determination." [DE-67-1] at 4; [DE-76-3] at 6. Witherspoon responded that "NCCIW's medical Department will have this information documented." *Id.* Edwards responded, "The offender had several 'no shows' and per the mental health encounters, medication was discontinued due to the patient's refusal saying she was 'sick of the pill lines'. Please see plaintiff's medical records."

12

[DE-67-1] at 4. Similarly, Interrogatory 8 askes Amos to "[d]escribe the basis for the determination Plaintiff should no longer be administered any psychotropic medication which she was previously prescribed during her incarceration in the custody of NCCIW, including during the postpartum period. Your response should include but not be limited to any factual, clinical, or medical assessment or evaluation relied upon in making the determination." [DE-76-5] at 6. Amos responded that "[j]ust as in the non-incarcerated community, that determination is based on the evaluations of Mental Health and Psychiatry specialists." *Id.* Plaintiff's medical records have been provided, and the responses, coupled with those records, are sufficient.

6. Interrogatory 8 to Junker and Alexander, Interrogatories 10 and 11 to Amos, and Interrogatory 11 to Witherspoon

Interrogatory 8 to Junker and Alexander, Interrogatory 10 to Amos, and Interrogatory 11 to Witherspoon asks these Defendants to "[d]escribe in detail any and all communications You had regarding NCCIW's and/or NCDPS's policy and practice of administering or withdrawing MOUD, including (i) who the communication was with; (ii) when the communication took place; (iii) the content of the communication; and (iv) the form of that communication." [DE-76-3] at 6; [DE- 76-5] at 6; [DE-76-6] at 5; [DE-76-7] at 6.

Witherspoon responded that "NCCIW's medical Department will have this information documented." [DE-76-3] at 6. This answer is not responsive to the interrogatory, as it is not reasonable to conclude that the medical department would maintain in its records communications between former warden Witherspoon and others, who may be outside the medical department, regarding policy and practice. Accordingly, the motion to compel is allowed as to Interrogatory 11 to Witherspoon who shall, after a reasonable investigation, supplement this response within thirty (30) days or certify that there is no further response.

13

Amos responded that "[t]he entities that were involved in our MAT treatment development are the UNC Ob/GYN department and our (NCCIW/DPS) medical services." [DE-76-5] at 6. This answer is not fully responsive to the interrogatory, as it does not indicate whether Amos had any communications regarding NCCIW's and/or NCDPS's policy and practice of administering or withdrawing MOUD, and if so the requested details regarding those communications. Accordingly, the motion to compel is allowed as to Interrogatory 10 to Amos who shall, after a reasonable investigation, supplement this response within thirty (30) days or certify that there is no further response.

Both Junker and Alexander responded that they communicated with no one regarding the substance of Interrogatory 8. [DE-76-6] at 5; [DE-76-7] at 6. These responses are sufficient.

Similarly, Interrogatory 11 asks Amos to "[d]escribe in detail any and all communications You had regarding NCCIW's and/or NCDPS's policy and practice of administering or withdrawing psychotropic medication, including (i) who the communication was with; (ii) when the communication took place; (iii) the content of the communication; and (iv) the form of that communication." [DE-76-5] at 6. Amos responded that "[j]ust as in the non-incarcerated community, that determination is based on the evaluations of Mental Health and Psychiatry specialists." *Id.* at 7. This answer is non-responsive, as it does not indicate whether Amos had any communications regarding NCCIW's and/or NCDPS's policy and practice of administering or withdrawing psychotropic medication, and if so the requested details regarding those communications. Accordingly, the motion to compel is allowed as to Interrogatory 11 to Amos who shall, after a reasonable investigation, supplement this response within thirty (30) days or certify that there is no further response.

### 7. Interrogatory 9 to Junker and Alexander

Interrogatory 9 asks Junker and Alexander to "[d]escribe in detail the basis for any decision to provide MOUD to any individual or group of individuals incarcerated in the custody of NCDPS, including why the decision was made to provide MOUD to that individual or group of individuals, and any medical basis for denying MOUD to other individuals in NCDPS custody." [DE-76-6] at 6; [DE-76-7] at 6. Junker responded that there is a "Federally funded pilot program currently being managed by an outside medical contractor (MAHEC) to provide MOUD to offenders at select re-entry sites; Orange Correctional and NCCIW minimum. This pilot remains under development." [DE-76-6] at 6. Alexander responded that "similar to all medical treatment regimens it is based on the licensed providers' decisions based on the offender's clinical presentation in addition to what is allowed by law." [DE-76-7] at 6. The court finds these responses are sufficient.

### 8. Interrogatory 10 to Junker and Alexander

Interrogatory 10 asks Junker and Alexander to "[d]escribe in detail the basis for any decision to withdraw from MOUD any individual or group of individuals incarcerated in the custody of NCDPS, including why the decision was made to withdraw from MOUD that individual or group of individuals, the method of withdrawal prescribed, and any medical or other basis for the decision to provide this method of withdrawal." [DE-76-6] at 6; [DE-76-7] at 6. Junker responded, "I am not a medical doctor and as such would not be involved in those clinical decisions." [DE-76-6] at 6. Alexander responded, "The facility [is] not licensed by the DEA, SAMHSA, the NC Board of Pharmacy, the State Opioid Treatment Authorities, or NC DHHS, as a substance use treatment facility. We had approval for MOUD for pregnant offenders via SAMHSA as long as it was secondary to the primary medical condition, which was pregnancy. Continuing to dose postpartum would have been tantamount to breaking the law and putting the

15

entire healthcare operation in jeopardy. The method of withdrawal in a clinical question that I am not qualified to answer." [DE-76-7] at 6. These answers are not fully responsive as to the portion of the interrogatory related to method of withdrawal, and Defendants must make a reasonable investigation in an attempt to answer. Accordingly, the motion to compel is allowed as to Interrogatory 10 to Junker and Alexander who shall, after a reasonable investigation, supplement their responses within thirty (30) days or certify that there is no further response.

9. RFPs to Witherspoon, Buffaloe, Amos, Junker, Alexander, and Edwards

Plaintiff asked one or more of Defendants Witherspoon, Buffaloe, Amos, Junker, and Alexander to produce the following documents :

> Any and all documents in your possession that relate to, support, or rebut any allegations or claims in Plaintiff's Second Amended Complaint.
>
> Any and all documents in your possession that relate to or mention Plaintiff, her detention at NCCIW, her transportation to or treatment at any outside medical facility, or her medical care.
>
> Any and all communications concerning or referring to the Plaintiff, her medical condition, or her pregnancy.
>
> Any and all communications concerning or referring to the Plaintiff, her medical condition, her pregnancy, or restraining her during pregnancy, labor, or post-partum.
>
> Any and all documents used or referenced in determining that Plaintiff was a "an immediate, credible risk of escape" on or about December 19-22, 2019.
>
> Any and all meeting minutes or notes recording discussions concerning Plaintiff's medical or mental health condition or needs post-partum.
>
> Any and all notes from meetings with Plaintiff from December 18, 2019 to January 18, 2020 discussing her medical or mental health condition, birth, labor, mood, or placement at NCCIW.

[DE-76-3] at 11–12, 14; [DE-76-4] at 4–5, 8; [DE-76-5] at 11–12; [DE-76-6] at 10–11, 13–14; [DE-76-7] at 11–12, 14. Defendants responded with a combination of similar answers, essentially

16

Case 5:21-ct-03270-D   Document 88   Filed 11/28/22   Page 16 of 19

stating that all responsive documents were produced by Edwards, they were not aware of documents outside the medical record, and/or there were no other documents to produce. [DE-76-4] at 4–5, 8; [DE-76-5] at 11; [DE-76-6] at 11, 13–14; [DE-76-7] at 11–12, 14. Additionally, Witherspoon stated, "I am at Albemarle Correction" and am not in possession of any documents. [DE-76-3] at 11–12, 14.

Plaintiff also requested documents from Edwards. RFP 2 sought "[a]ny and all documents in your possession that relate to or mention Plaintiff, her detention at NCCIW, her transportation to or treatment at any outside medical facility, or her medical care." [DE-67-1] at 4. Edwards initially produced 152 pages, including medical records, an outside hospital activity log, an inmate summary, shift narratives, and a grievance, and subsequently supplemented the production with roughly 1400 additional pages of medical records. *Id.* RFP 6 sought "[a]ny and all communications concerning or refering [sic] to the Plaintff [sic], her medical condition, her preganancy [sic], or restraining her during pregnancy, labor, or post-partum." *Id.* at 5. Edwards referenced the same 152 pages produced in response to RFP 2. *Id.* In RFP 8, Plaintiff sought "[a]ny and all communications concerning the policy, practice, or procedure at NCCIW for administering MOUD to incarcerated people to treat opioid use disorder from January 1, 2017, until present." *Id.* Edwards first produced policies Bates stamped pages 0185 – 0219, and later supplemented the production with additional policies. *Id.* RFP 9 sought "[a]ny and all communications concerning the policy, practice, or procedure at NCCIW for withdrawing incarcerated people from MOUD from January 1, 2017, until present," and Edwards produced the same documents as in response to RFP 8. *Id.* In RFP 15, Plaintiff sought "[a]ny and all documents concerning the transportation of Plaintiff to 'Southlight' or referring [sic] to any other actions take [sic] by Defendants in providing Subutex for Plainitff [sic]." *Id.* at 6. Edwards initially referenced

17

the 152-page production and then provided a supplemental response that the "information is still being searched for, and Defendant Edwards will supplement this response as soon as the information is located." *Id.* at 7. RFP 17 sought "[a]ny and all documents or communications concering [sic] or refering [sic] to the decision to administer MOUD to Plaintiff," and in response Edwards produced Plaintiff's medical records. *Id.* Finally, Plaintiff in RFP 18 sought "[a]ny and all documents or communications concering [sic] or refering [sic] to the decision to terminate Plaintiff's MOUD," to which Edwards also referenced Plaintiff's medical records. *Id.* at 7.

With respect to RFP 15 to Edwards, as well as any other RFP for which Defendants have indicated that they are still searching for records, the motion to compel is allowed and Defendants shall make a reasonable search and provide a supplemental production within thirty (30) days of the date of this order or certify that no further responsive documents exist.

With respect to RFPs 2, 6, 17, and 18 to Edwards, Plaintiff contends there are still outstanding documents that have not been produced, citing specifically that Edwards did not produce email communications from when Plaintiff was transported to the hospital, all relevant policies and all versions of policies, documents related to the creation of the MOUD program at NCCIW, training materials, guidelines, and email communications regarding changes to the MOUD program and institutional policies. Pl.'s Mem. [DE-68] at 7–8. Additionally, Plaintiff's reply notes documents referenced in discovery responses that were not produced, such as relevant training records, standard operating procedures, and a directive. Pl's Reply [DE-76-1] at 3–4. It is apparent that Edwards' production is incomplete and requires supplementation. Accordingly, the motion to compel as to these RFPs is allowed and Defendants shall make a reasonable search and provide a supplemental production within thirty (30) days of the date of this order or certify that no further responsive documents exist.

As for the RFPs to the other Defendants, all but Witherspoon relied on Edwards' document production and indicated they had no additional documents to produce, and it appears that curing Edwards' production deficiencies will result in all relevant documents being produced. With respect to Witherspoon, she was the warden at NCCIW at the time of the events at issue in this case, and it appears documents responsive to the requests to Witherspoon would have been included in Edwards' production. Witherspoon, however, did not rely on Edwards' production, but rather stated she was at a different facility and was not in possession of any documents. [DE-76-3] at 11–12, 14. Accordingly, the motion to compel is allowed as to the RFPs to Witherspoon, and within thirty (30) days of the date of this order, Witherspoon shall supplement her responses to either produce responsive documents or to indicate that all responsive documents have been produced by Edwards and no further responsive documents exist.

## III.    Conclusion

For the reasons stated herein, the motion to compel is allowed in part and denied in part, and Defendants shall supplement their responses within thirty (30) days of the date of this order. The parties shall bear their own expenses in connection with the motions, as the Court finds that the circumstances would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5).

SO ORDERED, the **28** day of November, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

19