THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-3270-D

| Tracey Edwards, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM IN** |
| v. | ) | **SUPPORT OF MOTION FOR** |
| | ) | **ATTORNEY'S FEES AND COSTS** |
| Todd Ishee, Benita Witherspoon, | ) | |
| Anthony Perry, James Alexander, Gary | ) | |
| Junker, Elton Amos, Kavona Gill, Tamara | ) | |
| Brown, Nikita Dixon, Tammy Williams, | ) | |
| Shelda Brodie, Tianna Lynch, and Lorafaith | ) | |
| Ragano, | ) | |
| | ) | |
| Defendants | | |

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | Introduction | 1 |
| II. | Procedural Background | 1 |
| III. | Legal Standard | 2 |
| IV. | Argument | 3 |
| | A. The Time and Labor Expended Is Reasonable | 3 |
| | B. Novelty, Difficulty, and Skill | 5 |
| | C. The Attorney's Opportunity Costs | 5 |
| | D. The Attorney's Expectations at the Outset of the Litigation | 6 |
| | E. Time Limitations | 6 |
| | F. Amount in Controversy and Results Obtained | 6 |
| | G. Experience and Reputation of the Attorney | 7 |
| | H. Undesirability of the Case | 7 |
| | I. Nature and Length of Relationship Between Attorney and Client | 7 |
| | J. Attorney's Fees in Similar Cases and Customary Fee for Like Work | 8 |
| V. | Conclusion | 9 |

## TABLE OF AUTHORITIES

**Cases**

*Barden v. Murphy-Brown LLC*,
 No. 7:20-CV-85-D, 2022 WL 16916358 (E.D.N.C. Nov. 14, 2022) .................................. 2, 4

*Dyer v. City of Gastonia*,
 No. 315CV00033MOCDCK, 2016 WL 4443190 (W.D.N.C. Aug. 19, 2016)......................... 9

*Gilliam v. Allen*,
 62 F.4th 829 (4th Cir. 2023) ................................................................................................. 8

*N. Carolina All. For Transp. Reform, Inc. v. U.S. Dep't of Transp.*,
 168 F. Supp. 2d 569 (M.D.N.C. 2001) ................................................................................. 8

*Nat'l Wildlife Fed'n v. Hanson*,
 859 F.2d 313 (4th Cir. 1988) ................................................................................................ 2

*Pearson v. Colvin*,
 No. 4:12-CV-23-FL, 2014 WL 7205095 (E.D.N.C. Dec. 17, 2014) ....................................... 9

*Pierce v. Statebridge Co.,
 LLC*, No. 1:20CV117, 2021 WL 1711784 (M.D.N.C. Apr. 29, 2021) .................................... 9

*Software Pricing Partners, LLC v. Geisman*,
 No. 319CV00195RJCDCK, 2023 WL 3467768 (W.D.N.C. May 15, 2023) .......................... 9

*Stuart v. Walker-McGill*,
 No. 1:11-CV-804, 2016 WL 320154 (M.D.N.C. Jan. 25, 2016) ........................................ 5, 8

*Tarlton for McCollum v. Sealey*,
 No. 5:15-CV-451-BO, 2021 WL 10319395 (E.D.N.C. Nov. 5, 2021), ............................... 8, 9

## I. Introduction

Pursuant to the Court's Order on Plaintiff's Motion for Sanctions (D.E. 127), Plaintiff Tracey Edwards brings this motion seeking a combined award of attorneys' fees of $88,191.85 and costs of $4,695.47. The requested attorneys' fee is fair and reasonable because it will compensate Counsel for their necessary and reasonable efforts in: meeting and conferring with Defendants prior to bringing the Motion for Sanctions; preparing Plaintiff's Motion, Reply and Sur-Reply; attending the hearing; ensuring Defendants' compliance with the Order; and taking the subsequent depositions of two Rule 30(b)(6) witnesses. Counsel incurred significant costs and fees in these efforts because of the extent of Defendants' pervasive discovery deficiencies and the need to engage in multiple meet and confer efforts and to develop an extensive and detailed record of the many records that had not been searched for or produced.

As a result of Plaintiff's Counsel's efforts, Defendants produced hundreds of relevant documents, including emails and training materials, after the Court issued its Sanctions Order, and Plaintiff was able to learn important information that will be relevant to proving her case at trial. Counsel's work also brought to light additional information evidencing ongoing discovery deficiencies, including the existence of an additional database that had not been searched and that relevant evidence has been spoliated.

## II. Procedural Background

On November 28, 2022, the Court issued its Order on Plaintiff's Motion to Compel. D.E. 88. Counsel for Plaintiff Tracey Edwards met and conferred with Counsel for Defendants to attempt to get the discovery to which she was entitled under the Order. *See* D.E. 98 at 13 (Motion for Sanctions). However, even after multiple attempts to meet and confer, it was clear that Defendants had not conducted the necessary reasonable investigations or produced responsive discovery materials. It was also clear that Defendants had failed to prepare their Rule 30(b)(6) witnesses to testify on designated topics outside of their personal knowledge. Therefore, Ms. Edwards filed her Motion for Sanctions on February 14, 2023, followed by a Reply and Sur-Reply in support after additional information regarding Defendants' discovery failures came to light in subsequent depositions. D.E. 97, 98 104, 109. On May 25, 2023, the Court held a hearing on the Motion for Sanctions. The next day, the Court granted the Motion for Sanctions in part and

ordered the Parties to meet and confer "promptly" in order to ensure the production of the outstanding discovery. D.E. 127 at 5, 7. The Court also ordered that Defendants' Rule 30(b)(6) deponents be re-deposed at Defendants' expense. *Id.* at 8. In addition to awarding Plaintiff her fees related to the retaken depositions, the Court ordered Defendants to pay Plaintiff's attorneys' fees and costs related to meeting and conferring prior to filing the Motion for Sanctions; preparing the Motion for Sanctions and related briefing; and any work Ms. Edwards' Counsel undertook to ensure Defendants' compliance with the Order. *See generally id.*

Through counsel, Ms. Edwards met and conferred with Defendants' Counsel twice over Zoom and exchanged numerous emails in an attempt to ensure that Defendants conduct a fulsome search for *all* outstanding discovery and provide information regarding the preservation or spoliation of responsive information and documents. Declaration of Lauren Kuhlik (Kuhlik Decl.), ¶¶ 14-16. On June 21 and 23, Ms. Edwards' Counsel re-deposed Defendants' Rule 30(b)(6) witnesses David May and Elton Amos. *Id.*, ¶ 30. From June 26 through July 3, the Parties attempted to negotiate an agreement on the fees and costs awarded in the Court's Order on the Motion for Sanctions, but those negotiations were unsuccessful.

### III. Legal Standard

> *Courts look to twelve factors to determine whether attorneys' fees are reasonable:*
> *(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.*

*Barden v. Murphy-Brown LLC*, No. 7:20-CV-85-D, 2022 WL 16916358, at *2 (E.D.N.C. Nov. 14, 2022) (approving award of $8,695.84 for failure to appear for deposition).

Out-of-state rates can be awarded when "services of like quality [are not] available in the locality where the services are rendered; and . . . the party choosing the attorney from elsewhere act[s] reasonably in making that choice." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988).

**IV. Argument**

As Counsel attested, they reasonably expended 166.55 hours related to meeting and conferring with Defendants' counsel, litigating the Sanctions Motion and ensuring compliance thereof and re-taking 30(b)(6) depositions. Kuhlik Decl., Ex. 2; Declaration of Oren Nimni (Nimni Decl.), Ex. 1; Declaration of April Ross (Ross Decl.), Ex. 1. This time excludes any duplication of effort. Cognizant of the need to work efficiently, Counsel for the four organizations representing Plaintiff coordinated their work to avoid excess time billed or duplication of effort. Further, one of the four firms is not seeking reimbursement for work related to this application. The firms that are seeking reimbursement have exercised their billing judgment to reduce the time sought by dozens of hours, or thousands of dollars of time. Counsel cut these hours to remove work that in their judgment was duplicative, administrative, or only partially compensable under the Order on the Motion for Sanctions. Kuhlik Dec., ¶ 33; Ross Decl., ¶ 12. Furthermore, the time requested includes little time by partners. Rather, Counsel gained efficiencies by having more junior attorneys take the lead on the relevant litigation, with supervision by senior partners. *See* Kuhlik Decl., Ex. 2; Nimni Decl., Ex 1; Ross Decl., Ex. 1. Here, relevant factors support the requested award of attorneys' fees and costs.[1]

A. <u>The Time and Labor Expended Is Reasonable</u>

First, the time and labor expended is reasonable. The Motion for Sanctions came after numerous attempts to meet and confer over the phone, by letter, and over email. Counsel for Defendants relied heavily on Counsel for Plaintiff to determine which specific documents had not yet been produced, requiring Counsel to incur significant attorneys' fees to ensure that Defendants were actually searching for and producing discovery as promised. For example, Plaintiff served requests for policies in April 2022. Defendants agreed to produce such documents, but their production was clearly inadequate. After several attempts to meet and confer—and the filing of a Motion to Compel—Defendants finally provided tables of contents to allow Plaintiff to select the specific policies she believed were responsive. *See* D.E. 98 at 13.

---

[1] Costs are limited to the actual cost of re-taking the depositions of David May ($2,160) and Elton Amos ($2,075) and the cost of researching legal precedent for the various filings related to the Motion for Sanctions ($302.32), as well as paying for the transcript of the Hearing on the Motion for Sanctions and for filings from this case for the same purpose ($158.15). Kuhlik Decl., ¶ 34. Counsel has chosen to exclude all other costs, such as mailing filings to the Court.

Even then, Defendants failed to produce requested policies, and continued to request that Plaintiff's Counsel provide a list of the policies that she had requested and that had not yet been produced, as Counsel for Plaintiff explained during the Hearing on the Motion for Sanctions. As of the date of this filing, Defendants have still not produced all the requested policies, despite Plaintiff listing the unproduced policies by name to Defendants on multiple occasions. Kuhlik Decl., ¶ 18. In the experience of Counsel for Plaintiff, the number of hours expended on ensuring compliance with specific requests would normally be lower, but Defendants' failure to track which policies were responsive, which were requested, and which had been produced necessitated additional work. This example is typical of Defendants' and their Counsel's insistence on shifting the work of complying with Defendants' basic discovery obligations onto Plaintiff's Counsel. The Declaration of Lauren Kuhlik includes additional information about the reasonable time expended on other aspects of the discovery dispute.

Thus, it is reasonable that Counsel spent 17.6 hours in the meet and confer process. And, for the same reason, it is reasonable to have spent 115.05 hours in litigation related to the Sanctions Motion, including researching for and drafting the Motion, Reply, and Sur-Reply and the Motions for Leave, and communicating within the team about those drafts. The Motion itself addressed separately the discovery deficiencies of two different groups of Defendants (officers and non-officers or officials), and the Defendants' deficiencies in preparing witnesses for Rule 30(b)(6) depositions. The reply and sur-reply were also necessitated by additional information that came to light during subsequent depositions, such as many Defendants' failure to conduct *any* individual searches; this is information that should have been provided to Plaintiff's Counsel during previous meet and confers. The hours expended in this case are reasonable compared to those approved in other cases. For example, this Court has awarded fees and costs for 16.6 hours related to preparing two much more simple motions to compel. *See Barden*, 2022 WL 16916358, at *2.

Likewise, the amount of time spent related to the re-taken 30(b)(6) depositions was reasonable. The deponents had been unable in their initial depositions to answer numerous questions related to their designated topics, such as: how discovery had been searched for, what had actually occurred during the

4

Plaintiff's pregnancy, labor, and postpartum recuperation, and what communications had taken place that could support or undermine their affirmative defenses and/or their subjective knowledge. *See* D.E. 98 at 9-10. In order to ensure that they covered all of these areas during the second depositions, Counsel had to spend extensive time reviewing the transcripts and the discovery in relation to the depositions, so that deponents could no longer get away with saying that they were ignorant of various policies, communications, and searches, or testifying as to the content of communications that apparently did not exist and certainly had not been produced.

B. Novelty, Difficulty, and Skill

The second and third factors are also met here. The skill required in this litigation is high. This is not a simple case. Rather, Plaintiff brings seven counts against thirteen Defendants involving statutory and constitutional claims. These claims require knowledge not only of civil rights and prison conditions litigation, but also of the complicated and novel intersection between security, pregnancy and postpartum care, mental health disabilities, and Opioid Use Disorder. The advocates in this case are skilled in this area. Lead attorney Lauren Kuhlik has extensive experience representing clients in prison conditions litigation and advocacy, including that related specifically to conditions of confinement for people who are pregnant or in postpartum recuperation. Other attorneys on Plaintiff's team likewise have expertise in civil rights, prison conditions, the Americans with Disabilities Act, and Opioid Use Disorder. Even in North Carolina, such expertise would command high rates. *See, e.g.*, *Stuart v. Walker-McGill*, No. 1:11-CV-804, 2016 WL 320154, at *16 (M.D.N.C. Jan. 25, 2016) (noting that even if the plaintiff could have found an experienced constitutional attorney in North Carolina willing to take the case, "at least one experienced constitutional lawyer in North Carolina charges paying clients an hourly rate of $625").

C. The Attorney's Opportunity Costs

The opportunity costs in this litigation are significant. All of the attorneys who have worked on this matter are working on numerous other cases. The attorneys are representing Ms. Edwards *pro bono*, and they have expended hundreds of hours on her complex civil rights case. Kuhlik Decl., ¶ 6; Nimni Decl., ¶ 4; Ross Decl., ¶ 3. The attorneys could have been expending that effort towards paying clients or ordinary

contingency fee matters, but due to Defendants' dilatory conduct, they were instead forced to divert significant time and effort in attempting to ensure Defendants' compliance with the Court's orders on the Motion to Compel and the Motion for Sanctions, in order to support Ms. Edwards' case. As the Court noted, Defendants' failure to comply with their discovery obligations and the Court's Order has substantially prejudiced Ms. Edwards. D.E. 127. One way that this prejudice has manifested is in the amount of work that her counsel has had to undertake in order to get even the most basic discovery, to meet and confer repeatedly, and to re-take depositions, which results in increased attorneys' fees and in opportunity costs for the lawyers.

D. The Attorney's Expectations at the Outset of the Litigation

The reasonable expectations at the outset of the litigation related to the Motion for Sanctions would be that the fees incurred would be significant. As Counsel for Defendants noted at the Hearing on the Motion for Sanctions, Counsel did not even ask most of the Defendants to conduct individual searches. Hearing Tr. at 8-9. And it was clear from deposition testimony and the production prior to the Motion for Sanctions that a significant amount of responsive discovery that is directly relevant to Ms. Edwards' claims had not been searched for or produced. *See generally* D.E. 98. Thus, it was reasonable for Plaintiff to expect that her Counsel would expend significant time to ensure that all responsive discovery was actually produced and/or to learn whether relevant documents or information may have been spoliated.

E. Time Limitations

The circumstances of the litigation related to the Motion for Sanctions placed significant time constraints on Ms. Edwards and her counsel. The Court ordered Defendants to complete their production of outstanding discovery by June 16, 2023. D.E. 127. Most of the discovery was produced that day, which was just 11 days before the end of discovery. Ms. Edwards therefore had to take the remainder of all depositions in just 6 business days, including the two 30(b)(6) depositions. The attorneys therefore had to conduct a significant amount of the relevant litigation, including reviewing discovery, revising deposition outlines, and taking depositions, in a very short period of time.

F. Amount in Controversy and Results Obtained

Because Ms. Edwards is seeking compensatory damages for the physical and emotional harm she has suffered and punitive damages, the amount in controversy in this case is potentially very high. Most of the discovery produced was comprised of emails, which, as Ms. Edwards indicated, go directly to resolving factual disputes and proving Defendants' state of mind. D.E. 98 at 6. Because the results obtained in the Order on the Motion for Sanctions go directly to Ms. Edwards' ability to prove not only her claims but also prove her entitlement to punitive damages, these results support the time expended in the litigation related to the Motion for Sanctions.

G. Experience and Reputation of the Attorney

The firms involved in this litigation are experienced and have a track record of success, as noted in the Firm Resume and backgrounds included in each firm's Declaration. Kuhlik Decl., Ex. 1; Nimni Decl., ¶ 2; Ross Decl., ¶ 4. Additionally, as noted in more detail above and in the Declarations, several of the attorneys involved in this litigation have extensive experience in litigation and advocacy related specifically to prison conditions, reproductive healthcare, Opioid Use Disorder, and the causes of action brought here. The amount of fee requested is reasonable considering the expertise of the attorneys involved.

H. Undesirability of the Case

Multiple local attorneys turned down the opportunity to work on this case due to lack of resources and availability. *See* Kuhlik Decl., ¶ 6. This is reasonable, considering the hundreds of hours that attorneys have put into this complex civil rights case thus far, as well as the fact that the attorneys are representing Ms. Edwards *pro bono*. It would have been difficult for Ms. Edwards to secure only counsel from the Raleigh area who not only had the expertise in prison conditions, pregnancy and postnatal care, and Opioid Use Disorder necessary to litigate this case, but who also would be able to expend hundreds of hours in *pro bono* representation.

I. Nature and Length of Relationship Between Attorney and Client

This litigation has been ongoing since September 2021, and all of the firms involved in this litigation have been involved since prior to the filing of the Complaint. This continuity of representation

has ensured the level of advocacy that secured the results of the Motion for Sanctions, and thus the fees requested herein.

  J. <u>Attorney's Fees in Similar Cases and Customary Fee for Like Work</u>

  The hourly rates requested are reasonable when compared to other similar cases. *See, e.g.*, *Tarlton for McCollum v. Sealey*, No. 5:15-CV-451-BO, 2021 WL 10319395, at *3 (E.D.N.C. Nov. 5, 2021), *aff'd sub nom. Gilliam v. Allen*, 62 F.4th 829 (4th Cir. 2023) (approving $6 million fee to Hogan Lovells attorneys using rates of up to $984 for partners, $744 for associates, and $292 for paralegals based on D.C. rates in a "complex civil rights action"). This is a complex civil rights case involving the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. It requires expertise with not only these legal concepts, but medical concepts of disability and Opioid Use Disorder, the intersection of Opioid Use Disorder and conditions of confinement related to pregnancy and postpartum recuperation, as well as factual and legal concerns related to prison conditions litigation more generally. These complex and possibly novel constitutional questions warrant experienced counsel, even if that counsel is out-of-state. *See, e.g.*, *Stuart*, 2016 WL 320154, at *16 (awarding out-of-state rates in reproductive rights case because, even though "there are many experienced civil rights attorneys in North Carolina, . . . there is no evidence that there were any experienced constitutional lawyers in the state who were as familiar with the confluence of reproductive rights and First Amendment law as the out-of-state attorneys" or "any evidence that these hypothetical lawyers would have taken on such a labor-intensive pro bono representation"). Furthermore, as outlined in the Declaration of Lauren Kuhlik, the Plaintiff was not able to secure solely local attorneys to work on her case. Kuhlik Decl., ¶ 6. *See N. Carolina All. For Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 168 F. Supp. 2d 569, 580 (M.D.N.C. 2001) (D.C. fees awarded where "North Carolina firms that might have been able to offer like-quality representation to Plaintiffs either lacked the manpower to take the case or were unavailable because of commitments to other matters" and where Plaintiff "reasonably" selected a D.C. firm based on its "extensive experience and considerable success" litigating similar cases).

  The attorneys on this case are working *pro bono*, and the costs and fees incurred thus far have been significant—not only because of the Defendants' pervasive discovery noncompliance, but also because it

8

is expensive and difficult to litigate complicated cases against 13 individual and official-capacity defendants. Given these circumstances, it is reasonable to believe that Ms. Edwards would have been unable to secure local attorneys who could contribute the hours and the expertise necessary at a rate she could have paid. *See Tarlton*, 2021 WL 10319395 (reasonable to use D.C. rates for counsel who had "'significant experience' in civil rights and wrongful convictions cases, specifically complex civil rights cases . . . were able to devote substantial resources to this case . . . [and] were able to accept the case pro bono").

The hourly rate requested for the D.C. Counsel is reasonable. Several attorneys are requesting rates consistent with the Adjusted Laffey Matrix. Kuhlik Decl., ¶ 9; Nimni Decl., ¶ 6. These rates are considered a reasonable starting point in the Fourth Circuit. *See, e.g.*, *Dyer v. City of Gastonia*, No. 315CV00033MOCDCK, 2016 WL 4443190, at *4 (W.D.N.C. Aug. 19, 2016) ("Based on the 2016 Laffey Matrix, the fees charged by plaintiffs' lawyers and paralegals are well within the reasonable range for this type of work."); *Pierce v. Statebridge Co., LLC*, No. 1:20CV117, 2021 WL 1711784, at *4 (M.D.N.C. Apr. 29, 2021) (Laffey Matrix is a "useful starting point to determine fees"); *Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2023 WL 3467768, at *4 (W.D.N.C. May 15, 2023) (affirming reasonableness of rates in part because staff's rates "are near or within the Laffey Matrix's relevant ranges"). Counsel for Crowell & Moring, LLC are requesting their regular rates, which are consistent with, if not lower than, other large firms in D.C. Ross Decl., ¶ 10. These rates are thus reasonable for out-of-state attorneys. Even when granting North Carolina rates, complex cases permit such rates. *See, e.g.*, *Pearson v. Colvin*, No. 4:12-CV-23-FL, 2014 WL 7205095, at *2 (E.D.N.C. Dec. 17, 2014) (fees granted in social security cases in the Fourth Circuit include hourly rates up to $1,433).

**V.    Conclusion**

For the reasons outlined above, counsel's requested fees of $88,191.85.85 and requested costs of $4,695.47 are reasonable.

Dated: July 7, 2023

Respectfully submitted,

*/s/ Lauren Kuhlik*
Lauren Kuhlik (*By Special Appearance*)
*Hassan Zavareei (*Notice of Special Appearance to be Filed*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20036
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
lkuhlik@tzlegal.com

Erika K. Wilson
N.C. Bar. No. 45020
Elizabeth Guild Simpson
N.C. Bar No. 41596
**University of North Carolina School of Law Clinical Programs**
102 Ridge Road
Chapel Hill, NC 27514
Telephone: (919) 962-2552
Fax: (919) 962-2883
Email: wilsonek@live.unc.edu
elizabeth@emancipatenc.org

*Local Rule 83.1 (d) Counsel for Plaintiff*

April N. Ross (*By Special Appearance*)
NC Bar No. 35478
**Aryeh Mellman (*Notice of Special Appearance to be Filed; Admission to Federal Court Pending*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 624-2500
Email: aross@crowell.com
amellman@crowell.com

*Oren Nimni (*Notice of Special Appearance to be Filed*)
D Dangaran (*By Special Appearance*)
**Rights Behind Bars**
416 Florida Avenue, NW #26152
Washington, D.C. 20001
Phone: (202) 540-0029
Email: oren@rightsbehindbars.org
d@rightsbehindbars.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2023, a copy of the foregoing was filed and served via the Court's CM/ECF system, which shall separately serve via electronic mail upon all counsel of record as follows:

Bettina J. Roberts
Sonya M. Calloway-Durham
North Carolina Department of Justice Post Office Box 629
114 W. Edenton Street
Raleigh, NC 27603
919-716-0322
Fax: 919-716-6761
Email: bjroberts@ncdoj.gov
       scalloway@ncdoj.gov

                                                                                                                         */s/ Lauren Kuhlik*
                                                                                                                           Lauren Kuhlik