THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-3270-D

| | |
|---|---|
| Tracey Edwards,<br><br>    Plaintiff,<br><br>  v.<br><br>Todd Ishee, Benita Witherspoon,<br>Anthony Perry, James Alexander, Gary<br>Junker, Elton Amos, Kavona Gill, Tamara<br>Brown, Nikita Dixon, Tammy Williams,<br>Shelda Brodie, Tianna Lynch, and Lorafaith<br>Ragano,<br><br>    Defendants. | **PLAINTIFF'S REDACTED<br>MEMORANDUM IN SUPPORT<br>OF SECOND MOTION FOR<br>SANCTIONS** |

I.  **INTRODUCTION**

This is now Ms. Edwards' third effort to get Defendants to comply with their basic discovery obligations. First, on November 28, 2022, this Court issued an Order granting in part Plaintiff Tracey Edwards' Motion to Compel. *See* Dkt. 88 ("Motion to Compel Order"). In relevant part, the Court ordered Defendants Todd Ishee, Benita Witherspoon, Elton Amos, Anthony Perry, James Alexander, and Gary Junker ("Defendants") to conduct a "reasonable investigation" into many of Ms. Edwards' discovery requests and to produce specific categories of documents including policies, training materials, and documents related to NCCIW's Medication for Opioid Use Disorder ("MOUD") program.[1]

Then, because Defendants did not comply, the Court granted in part Ms. Edwards' motion for sanctions ("First Sanctions Motion"). In relevant part, the Court ordered the Parties to meet and confer, and ordered Defendants to search for responsive evidence and to better prepare their 30(b)(6) witnesses ("Sanctions Order"). Dkt. 127. The Court ordered Defendants to produce documents that "came to light during depositions that should have been produced pursuant to the court's order, including written communications between NCCIW and DPS regarding relevant policies and MOUD, earlier versions of policies, and training for nurses related to MOUD." *Id.* at 4.

Now, in the wake of the Court's Sanctions Order, it has become clear that Defendants spoliated evidence, failed to conduct the now twice-ordered searches, and again failed to properly prepare their 30(b)(6) designees. They spoliated vital responsive evidence, such as an audit regarding the prison's noncompliant shackling policies and meeting notes. They also failed to search for specific documents that Ms. Edwards' counsel named. And their 30(b)(6) designees could not answer questions about discovery or communications, despite being designated on such topics.

At the hearing on the First Sanctions Motion, Ms. Edwards' counsel predicted that, if the Court gave Defendants another chance to come into compliance with the Motion to Compel Order, Ms. Edwards

---

[1] The Officer Defendants are not the subject of this motion. The Defendants referenced above are referred to as the "Non-Officer Defendants" in prior briefing. Mr. Ishee and Mr. Perry are substituted parties; the discovery was served on Eddie Buffaloe, Jr., and Claudette Edwards. Because Mr. Ishee and Mr. Perry are official-capacity Defendants, they are substituted automatically, and, for the purposes of this case, are interchangeable with the prior parties.

would likely "just appear back before the Court in a few months . . . with exactly the same complaints. And with Ms. Edwards, who's already been significantly delayed in prosecution of the case, still no closer to actually getting to trial." Dkt. 128, 7:11-17. Unfortunately, that prediction has come to pass. Ms. Edwards requests that the Court recognize Defendants will not comply with their discovery obligations, regardless of how many times the Court so orders. The time has come for the Court to issue more drastic remedies, in addition to ordering Defendants to pay Ms. Edwards' reasonable attorneys' fees for the time spent meeting and conferring and preparing this Motion: hold Defendants in contempt and order them to appear to show cause as to why they disobeyed the Sanctions Order; prohibit Defendants from using as evidence any discovery they should have produced but did not; strike the Seventh Affirmative Defense; order the jury to infer that Defendants had actual knowledge of the harms that their practices posed, and that they failed to implement training to prevent these harms; order the jury to infer that Defendants were supposed to, but did not, train officers that women in their third trimester of pregnancy or during their postpartum hospital stay should not be shackled; and finally, order the jury to infer that spoliated evidence would have supported Ms. Edwards' claims.

## II. BACKGROUND

On August 23, 2022, Ms. Edwards filed her Motion to Compel, which the Court granted in part on November 28. 2022. *See* Dkts. 67, 68, 88. But Defendants did not comply. After months of waiting for discovery to materialize and meeting and conferring, Ms. Edwards then filed on a Motion for Sanctions on February 14, 2023, and subsequently a Reply and Sur-Reply. *See* Dkts. 97, 98, 104, 109. Since the Sanctions Order, Ms. Edwards has worked hard to ensure Defendants' compliance. Through counsel, she twice met and conferred with them over Zoom and emailed with them extensively. Ms. Edwards' counsel identified specific documents that had to be searched for and produced in response to the Sanctions Order and suggestions for how to conduct such searches, but Defendants still failed to produce responsive documents.

Despite the deficiencies in the discovery production, Ms. Edwards took the re-scheduled 30(b)(6) depositions. Had the witnesses been properly prepared, these depositions could have cured some of the defects, or at least clarified the issues, for example, whether unproduced discovery was ever searched for,

2

was spoliated, or did not exist. However, the witnesses remained unprepared. The custodial designee, David May, spoke only with some defendants for a few minutes each, and did not try to educate himself on the official-capacity discovery topic on which he was designated, or on the results of directives and communications from the state pertinent to his designated topics. The medical designee, Defendant Elton Amos, did not speak to a single person other than his attorney to prepare, and likewise could not answer questions related to discovery or to communications that he himself had not sent or received. Neither of these deponents were even aware that their prior depositions had been the subject of a sanctions order.

### III. LEGAL STANDARDS

When a party fails to comply with a court order on discovery, Rule 37(b) authorizes sanctions. In deciding which to impose, "the court must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). The court may award reasonable fees and expenses, inform the jury of the party's failure, or, *inter alia*:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> . . . or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A) (i)-(vii).

Rule 26(g) authorizes sanctions for making an improper certification on discovery responses when the signer has not conducted a "reasonable inquiry" to ensure compliance with the Rules. Fed. R. Civ. P. 26(g)(1)(B)(i); *see* Advisory Committee Notes on Rule 26 ("[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand."). If there is an improper certification without substantial justification, the Court must impose appropriate sanctions on the signer, the party on whose

3

behalf the signer was acting, or both. Fed. R. Civ. P. 26(g)(3); *see, e.g.*, *Poole ex rel. Elliott v. Textron Inc.*, 192 F.R.D. 494, 498 (D. Md. 2000) (imposing sanction because counsel signed discovery responses without conducting requisite "reasonable inquiry" and quality of responses suggested improper purpose).

Lastly, a party is entitled to spoliation sanctions if the "spoliator had a duty to preserve material evidence . . . [and] the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." *Turner v. United States,* 736 F.3d 274, 282 (4th Cir. 2013) (citations omitted). Filing a lawsuit triggers the duty to preserve, including implementing a litigation hold. *See id.* The moving party need not establish bad faith, and the destruction of evidence according to a document retention policy is sufficiently "willful" for sanctions. *See, e.g.*, *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820–21 (E.D.N.C. 2008), *objections overruled,* No. 4:06-CV-117-F(2), 2009 WL 863348 (E.D.N.C. Mar. 27, 2009).

**IV.  ARGUMENT**

**A.  Defendants Failed to Search for and Produce Documents Ordered by the Court**

The Court held that the Defendants did not fully comply with the Court's Order on the Motion to Compel, in which the Court ordered production on five categories of documents:

> (1) email communications between NCCIW And DPS officials regarding relevant policies; (2) NCCIW shackling policies; (3) training records; (4) communications related to Ms. Edwards and/or the creation of the medications for opioid use disorder ("MOUD") program at NCCIW; and (5) all versions of the NCCIW policies that Ms. Edwards' counsel requested by name from defense counsel on August 9, 2022, and November 21, 2022.

Dkt. 127 at 3-4.

Defendants have not searched for nor produced all of these documents, which are responsive to discovery requests Ms. Edwards served in April and June 2022 and subject to two Court Orders. As is further discussed in subsection (B), some of this relevant evidence is in fact spoliated, and other evidence likely is spoliated due to the failure to institute a litigation hold. Their failure to produce these documents is in bad faith and warrants sanctions. Further, Defendants' counsel improperly certified that she made a reasonable inquiry to ensure compliance with the Rules governing discovery because Defendants and their

4

counsel did not make a reasonable search for all responsive discovery.

### i. Emails between NCCIW and DPS Officials Regarding Policies

Ms. Edwards served requests for communications regarding NCCIW's policies concerning shackling and MOUD. Dkt. 67-1 at 5 (RFPD 7-9). Defendants have confirmed that communications regarding these policies exist. *See, e.g.*, Dkt. 98. Plaintiff's counsel requested that Defendants' counsel would conduct any necessary search for responsive communications between NCCIW and DPS related to policy changes, including providing search parameters. *See* L.R. 7.2(c) certificate. These emails, which are relevant to prove Defendants' knowledge at the time they failed to update their policies, have not been produced, despite multiple specific requests and Court orders. The Court should thus strike the Defendants' Seventh Affirmative Defense and order the jury to infer that Defendants had actual knowledge that their practices violated state law and were so informed by the state, but did not take adequate measures to correct their errors.

### ii. All Versions of Relevant Policies

Ms. Edwards has requested all versions of responsive policies. *See* Dkt 67-1 at 4-5 (RFPD 3 & 4). As this Court noted, Plaintiff's counsel requested policies by name on August 9 and November 21, 2022. *See* Dkt. 127 at 3-4. On April 28, 2023, Plaintiff's counsel again requested in writing ten responsive policies that had not been produced. *See* Ex. A.[2] The Parties also discussed these policies during two subsequent meet and confer conversations. Some of these policies have never been produced at all. For others, Defendants did not produce the versions that were operative during Ms. Edwards' incarceration. *See* L.R. 7.2(c) certificate. The policies in place at the time of the incidents in question are highly relevant to this case, and there is no excuse for the Defendants' failure to produce responsive policies after numerous reminders and requests. The Court should thus order the jury to infer that Defendants had actual knowledge that their practices violated state law, but they failed to update their policies to correct these errors.

---

[2] All exhibits are appended to the Declaration of Lauren Kuhlik ("Kuhlik Decl.").

### iii. Training Documents

Ms. Edwards requested training materials from May 14, 2019, to June 4, 2021, concerning the treatment of people who are pregnant, post-partum, or have OUD. Dkt. 67-1 at 3, 4-5 (RFPD 3-4); Dkt. 67-2 at 8 (RFPD 3-5). While Defendants produced some materials, there are three sanctionable deficiencies. First, almost all of the training materials were last updated in January 2023, years after the requested timeframe, even though Ms. Edwards' counsel specifically requested materials from 2019 courses. Ex. B. Then-current materials are highly relevant to the Defendants' knowledge at the time Ms. Edwards was shackled in violation of state policy, and there is no excuse for Defendants' failure to produce training materials from the time frame identified in Ms. Edwards' discovery requests.

Second, recent productions indicate that  Ex. G (May Tr.), 46:1-21. Ms. Edwards requested "documentation of training that was provided before Plaintiff's childbirth," which would have

. Finally, Dr. Amos testified about the existence of materials related to MOUD trainings given to nurses. Ex. D (First Amos Tr.), 119:2-16. Those documents were not produced, and there is no evidence that they were even searched for. Ex. E (Second Amos Tr.), 34:9-17.

These materials go to Defendants' knowledge of the harm and the need to train employees to conform with state policy and constitutional obligations. The Court should order the jury to infer that Defendants failed to provide required training regarding treating postpartum withdrawal from MOUD and shackling people during their third trimester, labor, and postpartum recuperation.

### iv. MOUD Documents

Despite multiple Court Orders, Defendants have not produced all responsive documents related to NCCIW's MOUD program. In June 2022, Ms. Edwards served a request for production of "[a]ll meeting

6

minutes from any meeting in which the MOUD program at NCCIW or Southlight was discussed." Dkt. 67-2 at 10 (RFPD 21). In the recent discovery production and 30(b)(6) depositions, Ms. Edwards learned that

███████████████████████████████████████████████████████████████████████████████████

Ex. E, 41:15-23, 43:1-6. However, Dr. Amos only conducted a search for responsive documents in his email inbox back to July 2020. *Id.*, 97:23-98:3. ███████████████████████████████

███████████████████████████████████████ At least some meeting minutes are stored on Defendants' computers. Ex. F (Witherspoon Tr.), 60:12-19. Meeting minutes about the MOUD program at NCCIW are highly relevant to the Defendants' knowledge at the time Ms. Edwards was forced to withdraw abruptly from her buprenorphine, and there is no excuse for the Defendants' failure to search for and produce them. The Court should thus order the jury to infer that Defendants were aware of the substantial risk of serious harm of denying Ms. Edwards buprenorphine.

  B.  **Defendants Spoliated Evidence**

Ms. Edwards filed her complaint in September 2021, triggering a duty to preserve relevant evidence. However, Defendants' counsel informed Plaintiff's counsel on June 1, 2023, that the Defendants had not issued any litigation hold in this case, and it appears that Defendants were not otherwise told of their duty to preserve evidence. *See* L.R. 7.2(c) certificate. There are at least two categories of relevant documents that have been spoliated: (1) ███████████████████████████████████

███████████████████████████████████ and (2) documents stored on the former warden's computer.

First, Rule 30(b)(6) witness Mr. May testified that ███████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████. *See* Ex. E, 103:11-20. A litigation hold would have prompted NCCIW to suspend its normal document destruction policy to preserve these documents.

In his deposition, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

7

█████████. ████████████████████████████████████████

███████████████████ Based on discovery produced after the Order on the Motion for Sanctions, there is reason to believe that ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████, but have since been spoliated. Ms. Edwards is thus substantially prejudiced in proving elements of her case involving knowledge, deliberate indifference, and the state of mind necessary to prove her entitlement to punitive damages. Although Ms. Edwards has strong evidence of these claims, ████████████████████████████████

████████████████████████████████████████████████████

███████████ would likely be highly compelling to a jury.

Second, former warden Benita Witherspoon testified that she stored some responsive documents such as meeting notes on her work computer. Ex. F, 68:16-19, 119:24-120:11. Ms. Witherspoon was employed by DPS at the time Ms. Edwards filed her Complaint and served discovery requests. But at the time, she did not conduct a search on her computer. *Id.*, 122:12-124:1. Defendants' counsel indicated that the computer may not have been available anymore in 2023. *See* L.R. 7.2(c) certificate. ████████

████████████████████████████████████████ Thus, because the computer and the documents were not preserved during Ms. Witherspoon's employment, the responsive materials have been spoliated. These documents, which could also include directives from the state regarding the shackling policies, could have demonstrated Ms. Witherspoon's state of mind, including her awareness of the harm of relevant shackling and MOUD policies and her knowledge that the practices were continuing. Thus, Ms. Edwards is substantially prejudiced in proving the elements of her case involving state of mind, such as deliberate indifference and her entitlement to punitive damages.

Other unproduced documents are likely spoliated as well. The Court has twice ordered Defendants to search for categories of documents. Dkt. 88, 127. Ms. Edwards' counsel requested that specific documents, including audits and emails between NCCIW and the state and/or DPS regarding MOUD and

8

policy updates be produced, indicating that Defendants had to search for them even if the email search parameters did not identify them. *See* L.R. 7.2(c) certificate. They have not been. And recent email productions did not include relevant attachments, such as conflicting NCCIW and DPS policies. Kuhlik Decl., ¶ 2. Because Defendants' search failed to produce these documents, it is reasonable to believe that they spoliated them. *See, e.g.*, *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact permits an inference that the party fears to produce the evidence; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.") (cleaned up). These documents would have supported Ms. Edwards' substantive claims as well as her entitlement to punitive damages. She is thus substantially prejudiced.

Sanctions are warranted for this spoliation to "level[] the evidentiary playing field" and "sanction[] the improper conduct." *Id*. Specifically, the Court should order the jury to infer that the audits would have shown that the state had found the shackling policies noncompliant, that the responses were inadequate, and that other spoliated evidence would have shown Defendants' knowledge of the harm of the complained-of practices, as well as that they were ongoing.

### C. Defendants Again Failed To Properly Prepare Their Rule 30(B)(6) Witnesses.

Defendants "conceded that the 30(b)(6) witnesses could have been better prepared" and that the "deficient testimony cannot be cured by obtaining testimony on those topics from other witnesses." Dkt. 127 at 7. Because Ms. Edwards was "greatly prejudiced by the ill-prepared 30(b)(6) witnesses[,]" the Court ordered Defendants to "bear Plaintiff's attorney's fees and costs associated" with re-taking those depositions. *Id.* at 7-8. However, Defendants again failed to properly prepare their witnesses for deposition.

First, Defendants have *still* not designated witnesses on all topics. Dr. Amos testified that ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. E, 14:20-15:7. Thus, no witness was designated to testify on the medical aspects of this topic. And only halfway through Dr. Amos's *second* deposition did

9

counsel learn that ███████████████████████████████

██████████████████████ ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████. His testimony could therefore not cure Dr. Amos's ill preparation.

Second, ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████. Given the failure to produce responsive discovery, and failure to issue a litigation hold, it is particularly egregious that neither designee was prepared to answer questions about official-capacity discovery, such as what kind of search was conducted and whether documents had been preserved. The failure to prepare witnesses again warrants the sanctions outlined above.

## V. CONCLUSION

Having subjected Ms. Edwards to cruel and inhumane treatment as a prisoner, Defendants now compound her pain by needlessly delaying Ms. Edwards' ability to seek recompense and prosecute her case. She respectfully requests this Court to impose on Defendants the monetary and issue sanctions outlined above, or any other sanctions that the Court determines are just and proper under the circumstances.

---

[3] There are transcription errors, but in the cited portions, Dr. Amos is testifying that ████████████████ ████████████████████████████████.

Dated: July 18, 2023                                             Respectfully submitted,

/s/ Lauren Kuhlik
Lauren Kuhlik (*By Special Appearance*)
*Hassan Zavareei (*Notice of Special Appearance to be Filed*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW, Ste 1010
Washington, D.C. 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: lkuhlik@tzlegal.com
          hzavareei@tzlegal.com

Erika K. Wilson
N.C. Bar. No. 45020
Elizabeth Guild Simpson
N.C. Bar No. 41596
**University of North Carolina School of Law Clinical Programs**
102 Ridge Road
Chapel Hill, NC 27514
Telephone: (919) 962-2552
Fax: (919) 962-2883
Email: wilsonek@live.unc.edu
          elizabeth@emancipatenc.org

*Local Rule 83.1 (d) Counsel for Plaintiff*

April N. Ross (*By Special Appearance*)
NC Bar No. 35478
**Aryeh Mellman (*Notice of Special Appearance to be Filed; Admission to Federal Court Pending*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 624-2500
Email: aross@crowell.com
          amellman@crowell.com

Oren Nimni (*By Special Appearance*)
D Dangaran (*By Special Appearance*)
**Rights Behind Bars**
416 Florida Avenue, NW #26152
Washington, D.C. 20001
Phone: (202) 540-0029
Email: oren@rightsbehindbars.org
          d@rightsbehindbars.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2023, a copy of the foregoing was filed and served via the Court's CM/ECF system, which shall separately serve via electronic mail upon all counsel of record as follows:

Bettina J. Roberts
Sonya M. Calloway-Durham
North Carolina Department of Justice Post Office Box 629
114 W. Edenton Street
Raleigh, NC 27603
919-716-0322
Fax: 919-716-6761
Email: bjroberts@ncdoj.gov
scalloway@ncdoj.gov

       /s/ Lauren Kuhlik
      Lauren Kuhlik

## Local Rule 7(c)(2) Certification

I hereby certify that Plaintiff Tracey Edwards, through counsel, has made a good faith effort to secure the discovery addressed in this motion, but the discovery material sought has not been provided. This Certification summarizes Plaintiff's attempts to secure discovery since the filing of the Motion for Sanctions on February 14, 2023. Plaintiff's efforts to secure discovery prior to that date are recounted in Plaintiff's Local Rule 7(c)(2) Certification in Dkt. 68 and 98.

On April 28, 2023, I sent Counsel for Defendants a list of NCCIW and DPS policies that we had previously requested but had still not been produced. I also stated, "Since I don't know how often the policies are updated, I can't say whether we have all responsive versions of the all the policies that we do have." Those policies have still not all been produced.

On May 26, 2023, the date that the Court issued its Order on the Motion for Sanctions, I sent Counsel for Defendants an email requesting to meet and confer regarding the outstanding discovery referenced in the Order. Counsel for Defendants agreed to meet by Zoom on June 1, 2023. On May 31, 2023, I sent Counsel for Defendants a checklist, which is attached as **Exhibit J** to this Memorandum.

During that meet and confer, Counsel for Defendants asked me for a list of policies that Plaintiff had requested that had not been produced. I stated that the list of policies that we sent on April 28 included all the policies that we had requested that had not yet been produced, so she should use that as a guide. I added that that list went only to the policies that hadn't been produced at all, and that there may be other versions of policies that may not have been produced. Counsel for Defendants also agreed to speak with her clients regarding the existence of medical training, as no medical training had been produced. We discussed search parameters for the email pull. I asked her to please ensure that the communications between NCCIW and the state regarding the MOUD program were produced if they existed, and told her that Defendant Alexander could likely help identify how to find those emails if they did not show up in the broader search, and that the custodians might not be named Defendants. I also suggested additional search terms for those emails. Defendants' Counsel also agreed to speak with her clients and conduct a search regarding: (1) non-email documents, such as documents brought home from work or texts; and (2) documents that may have been discarded or destroyed since the lawsuit was filed. On the latter point, Defendants' Counsel confirmed that no litigation hold had been issued in this litigation.

On June 2, 2023, Counsel for Defendants emailed a list of proposed email search parameters. These parameters did not include broad searches, such as searches for the term "pregnancy" or "postpartum." That day, my coworker responded asking about the exclusion of the broad search terms, and requesting additions to the proposed parameters. On June 5, Counsel for Defendants responded, indicating that the broad search terms would likely produce too many unresponsive results, and suggesting that Defendants begin with the proposed search terms and then "continue this discussion" as necessary. Given the brief length of time before the end of discovery, I emailed back agreeing to start with the agreed-upon search parameters, and stated, "we can continue the discussion if necessary, as you propose." I also requested: "Once you have a sense for the volume, please let us know a reasonable timeframe to produce the documents. If necessary, we can further discuss the search parameters before or concurrently with the productions."

On June 9, 2023, one week before the Court-ordered deadline for supplemental productions, my coworker emailed Counsel for Defendants regarding an update on the status of the production. At this point, Defendants had not made any productions since the Order on the Motion for Sanctions was issued. My coworker also stated, "we understand from our meet and confer call that there was no litigation hold in place. Can you please provide additional information about what you have done to preserve documents pursuant to yours' and the Defendants' discovery obligations, including ensuring that Defendants did not delete responsive emails or discard responsive documents?" She also asked about the status of conversations with Defendants about "whether there are possibly responsive documents that have since been discarded or destroyed," giving as examples, "possibly responsive notes" on Warden Witherspoon's

13

computer.

The following day, Counsel for Defendants stated that she had "not yet received the results of the email pull." She also stated that she was meeting with the Defendants "next week and will make sure to discuss possible responsive documents that may have been destroyed or discarded."

On June 13, I emailed Counsel for Defendants and requested a second meet and confer "to ensure that all items on the meet and confer checklist are met, since there might not be time if any further production is provided on or shortly before the deadline and is deficient."

We met and conferred the next day. I again stated that the emails between NCCIW and the state regarding the MOUD (or MAT) program needed to be produced, even if the custodian was not one of the named Defendants, and I reiterated that Dr. Alexander might know who the custodian is if the emails did not show up in the broader search. I also explained that emails between NCCIW and DPS regarding policy updates had to be produced even if the search parameters did not produce them. I suggested that, if those emails did not show up in the broader search, she conduct a search using the specific policy names. I also requested that audits and incident reports that David May mentioned in the 30(b)(6) deposition be produced. I suggested that she speak with David May to ensure that he knew where those documents were, either physically or electronically. Defendants' Counsel explained that she was having a search conducted on the computer in former Warden Witherspoon's office, but she was not sure whether the computer was the one that Ms. Witherspoon used during her employment.

On that day, June 14, 2023, Defendants produced policies and medical literature responsive to Ms. Edwards' Requests for Production related to Defendants' expert report. The next day, Defendants produced supplemental responses to Plaintiff's Requests for Admission as well as Plaintiff's additional medical records. Finally, on June 16, 2023, Defendants produced a number of emails, training materials, and policies.

On June 20, 2023, Counsel for Defendants emailed me summarizing which documents had been produced. She also stated that "Left to provide is the retention policy for communication (responsive to Def. Ishee's requests for production) and a verification of former Def. Edwards' 2nd set of interrogatories." As of the date of this filing, the former has not been produced.