THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-3270-D

| | |
|---|---|
| Tracey Edwards, <br><br> Plaintiff, <br><br> v. <br><br> Todd Ishee, Benita Witherspoon, Anthony Perry, James Alexander, Gary Junker, Elton Amos, Kavona Gill, Tamara Brown, Nikita Dixon, Tammy Williams, Shelda Brodie, Tianna Lynch, and Lorafaith Ragano, <br><br> Defendants. | **PLAINTIFF'S RESPONSE TO NON-PARTY CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S RESPONSE TO THE COURT'S SHOW CAUSE ORDER** |

## I. Introduction

After several previous attempts at settlement and mediation proved unfruitful, Plaintiff and Defendants agreed to schedule a settlement conference for the parties and all other required attendees. One of the required attendees, however, did not attend, either virtually or otherwise—a representative of Certain Underwriters at Lloyd's, London ("Underwriters"). After this Court issued an order to show cause why Underwriters should not be held in contempt, and Underwriters responded, it became clear that Defendants' counsel's misrepresentations to the Court and its disregard of court orders undercut any ability to have all required parties at the mediation or for the mediation to be substantive. Underwriters' response establishes that Defendants' counsel never intended to meaningfully negotiate this settlement.

This Court has the authority and reason to sanction Underwriters, but, regardless of whether this Court chooses to do so, this Court should use its inherent authority to sanction Defendants for

1

the costs associated with attending a settlement conference and filing this brief.[1] As a result of the actions of Defendants' counsel, the mediation stood no chance of being productive and lacked a required party.

**II.     Background**

This is a case that should have settled immediately after it was initiated. The case involves an unlawful shackling of a pregnant woman during labor, and the denial of medication postpartum that forced her into a torturous and unjustifiable withdrawal. All arms of the state of North Carolina—including the legislature, the governor, and the attorney general—have condemned shackling in the exact circumstances the Plaintiff endured, recently passing a law banning it. But officials at the only prison in North Carolina that incarcerates pregnant people were violating clear state policies for years by engaging in this cruel and unusual treatment of pregnant prisoners. Immediately after filing this suit, Plaintiff tried to resolve it, as it seemed to be in the interests of all parties to put this to rest and allow the state to move forward with just and humane treatment of its charges. Those efforts were rebuffed, with Defendants insisting that discovery had to be conducted before engaging in settlement talks.

Plaintiff's counsel served several settlement demands on Defendants' counsel. Each time, Defendants rejected those demands without a counteroffer. However, Defendants eventually indicated a willingness to engage in mediation. *See* Joint Mot. for Ext. of Time for Deadline of Dispositive Mot's and to Req. Assistance with Settlement at 2–3, Dkt. No. 143. Based on the

---

[1] These costs include but are not limited to: 1) briefing the pre-mediation statement and challenges to Defendants' motions to exclude the insurance provider; 2) travel and lodging; 3) time spent at the mediation; 4) time spent briefing the issue in the instant brief.

2

Underwriters' Response, it appears that none of these demands were ever provided to the Underwriters.

On August 11, the Parties filed a joint notice in which Defendants asked that a representative from Underwriters be excused from attending the conference, correctly noting that Plaintiff "opposes Defendants' request for . . . a representative of the insurance carrier to be excused from attending the mediation in its entirety, but does not oppose those individuals attending the mediation virtually." Dkt. 155. Upon a Notice of Deficiency from the Court, the Defendants filed a Motion with the same request. *See* Defs. Mot. to Excuse Attendance at Ct-Hosted Settlement Conf., Dkt. No. 156.

On August 21, 2023, the Court held a telephone conference before the mediation to allow the parties to discuss the joint notice and other matters. During that conference, Defendants' counsel stated that the insurance representative was not required because the Defendants had already determined what they were willing to settle the case for. When counsel for Plaintiff expressed their concern that this was a problem and that it was counter to any reasonable means of resolving the case, counsel for Defendants walked the statement back and claimed that it had not put a cap on the amount of authority it possessed but continued to insist that the presence of an insurance representative was unnecessary.

On August 22, 2023, the Court denied the motion to excuse a representative from Underwriters. *See* Order, Dkt. No. 162.

On September 5, 2023, Defendants' counsel emailed the Court and Plaintiff's counsel a purported statement from Underwriters that summarized the insurance policy, explaining that the insurance representative had no authority to settle the case because the defendants reserved all

3

rights to determine how to settle the case. The Court ordered Defendants' counsel to file a motion for reconsideration. Plaintiff opposed that motion.

On September 8, 2023, the Court denied a motion to reconsider the ruling because it "present[ed] no new material information on the issue of attendance by the insurance carrier representative." *See id.*; Order Den. Mot. for Recons. Re. Order on Mot. for Misc. Relief at 1, Dkt. No. 171.[2] Nonetheless, no representative attended the settlement conference.

After this Court entered an order to show cause why Underwriters should not be sanctioned, Dkt. No. 175, Underwriters submitted a lengthy response explaining their representative's absence, one that documented a series of misleading statements made by Defendants to Plaintiff's counsel and the Court, and court orders they had flouted. *See* Underwriters Resp., Dkt. No. 183. For example, although Defendants purported to submit a series of dates to the Court that all required parties would be available for a settlement conference, they did so without discussing the dates or even contacting Underwriters. *See id.* at 10. A subsequent court order sought a telephone conference which required the parties be prepared to discuss the basis for any required party that sought to be excused, which Defendants' counsel attended despite still having not discussed the issue with Underwriters or even having contacted them. *Id.* at 12–13. When Defendants finally told Underwriters of the court order, Underwriters expressed their confusion and willingness to seek alternatives to allow them to comply, but Defendants did not respond to their messages for weeks. *Id.* at 14–15. Different counsel for Defendants then contacted Underwriters and told them

---

[2] Although Plaintiff had consented to the representative appearing virtually, Plaintiff opposed this motion for reconsideration, noting that the pleading itself contained statements for which it was "not clear who made these statements or on what basis, as there is no citation to an insurance policy, state law, or sworn statement from an insurance company representative." These unattributed statements caused concern because "Defendants have repeatedly made statements in their briefings before the Court that turned out not to be true."

4

that it was their responsibility to comply with the court orders secured against them and, one day before the conference, filed a "notice" with the Court informing it that Underwriters were not planning to attend. *See id.* at 17; *see also* Notice at 3, Dkt. No. 173. Before receiving this notice, Plaintiff's attorneys had prepared for and traveled out of state to attend a settlement conference that—because Defendants had failed to communicate effectively with their insurer and affirmatively misrepresented their communication to plaintiffs and this Court—stood no chance of being fruitful.

**III.     Argument**

This Court has the inherent power to sanction Defendants with attorneys' fees and costs for bad faith actions, including false statements to the Court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). In *United States v. Shaffer Equipment Company*, the Fourth Circuit affirmed the factual findings of a district court that sanctioned government attorneys who "repeatedly and deliberately violated their duty of candor to the court by failing to disclose" a material witness's misrepresentations. 11 F.3d 450, 454 (4th Cir. 1993).[3] Although the attorneys in *Shaffer Equipment* only failed to correct misrepresentations, rather than make them directly to the court as occurred here, the Fourth Circuit still took the opportunity to articulate the importance of the duty of candor:

> [W]e are confident that a general duty of candor to the court exists in connection with an attorney's role as an officer of the court. . . . Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the [judicial] process. . . . While no one would want to disagree with these generalities about the obvious, it is important to reaffirm, on a general basis, the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process. Each lawyer undoubtedly has an important

---

[3] The court did reverse the district court's dismissal of the case for failing to consider whether this ultimate sanction was appropriate, noting that a lesser sanction, including "an award of attorney's fees may be part of the district court's overall calculus in selecting a sanction after further proceedings." *Id.* at 463.

5

> duty of confidentiality to his client and must surely advocate his client's position vigorously, but only if it is truth which the client seeks to advance. The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end. It is without note, therefore, that we recognize that the lawyer's duties to maintain the confidences of a client and advocate vigorously are trumped ultimately by a duty to guard against the corruption that justice will be dispensed on an act of deceit.

*Id.* at 457–58.

In *Six v. Generations Fed. Credit Union*, the Fourth Circuit further affirmed district courts' inherent power to sanction a party for misleading the court. In *Six*, plaintiff's counsel, through a series of "misrepresentations, obfuscations, and omissions," implied to the court that they did not possess a copy of a disputed loan agreement, when in fact, plaintiff's counsel obtained a copy of the disputed agreement before commencing the litigation. 891 F.3d 508, 511 (4th Cir. 2018). Further, while litigating defendant's motion to sanction this conduct, plaintiff's attorneys made a single "affirmative misrepresentation" regarding their conduct earlier in the litigation in a sworn affidavit. *Id*. at 511, 516–17. Finding that plaintiff's conduct evinced "a lack of candor to the court and disrespect for the judicial process," the Fourth Circuit affirmed the district court's award of compensatory sanctions that covered defendant's "costs caused by [plaintiff's] wrongful conduct." *Id*. at 521. The Fourth Circuit explained that "[c]ourts are empowered to fashion an appropriate sanction for conduct which abuses the judicial process, such as an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* at 519.

Protecting the duty of candor is particularly important in cases such as this one, where the relationship between Underwriters and Defendants prevented the adversarial process from self-correcting. In both *Shaffer Equipment* and *Six*, opposing counsel helped expose misrepresentations in the ordinary course of litigation. *Shaffer Equipment*, 11 F.3d at 461 ("this violation was

effectively brought to light by opposing counsel"); *Six*, 891 F.3d at 516 (explaining how the discovery process demonstrated counsel's misrepresentations).

Nothing of the sort occurred here, as only the unusual circumstance of the show cause order against Underwriters concerning sanctions put their interests into conflict with Defendants sufficiently for Defendants' dishonesty to become apparent to the Court. By their own admission, "Underwriters were reluctant to point out the defendants' apparent violations of prior court orders" and sought to explain such violations "off-the-record to avoid any documented appearance of adversity with the defendants." Underwriters Resp. at 19–20. Even then, Underwriters were unable to share the most direct evidence of their dishonesty, the correspondence between Underwriters and Defendants, because they "believe their correspondence with the defendants' counsel is protected from being shared with the plaintiff." *Id.* at 10, n.5.

Sanctions are also warranted against Defendants because they are part of a larger pattern of dishonesty. *Six* involved only one affirmative misrepresentation, which was made in the course of sanctions briefing and not before, and *Shaffer Equipment* involved none. The Fourth Circuit nonetheless found the conduct sanctionable because the parties' actions demonstrated a pattern of subverting the duty of candor. *Six*, 891 F.3d at 515, n. 7 (holding that counsel's "mosaic of half-truths . . . evince [a] lack of candor to the court and disrespect for the judicial process"); *Shaffer Equipment*, 11 F.3d at 459 (holding that counsel's failure to disclose false statements made by witness amounted to a breach of their duty of candor). Underwriters' submission to the Court demonstrates a number of instances in which Defendants flouted court orders and made dishonest statements to the Court concerning Defendants' representation of their interests. Defendants' counsel omitted the ability of Underwriters to attend virtually and did not set forth the policy

7

introduced by Underwriters for the first time as an exhibit to their response to this Show Cause Order. *See* Dkt. 183-1.

And that is just on this one issue—Plaintiff opposed Defendants' motion to reconsider on the specific grounds that the vagueness of their assertions suggested dishonesty given their past conduct, noting that "Defendants have repeatedly made statements in their briefings before the Court that turned out not to be true." For example, Defendants have repeatedly claimed to the Court that they have produced all responsive discovery, only to later be forced to admit that they have not—and even that they had not even bothered to conduct a search for documents that the Court ordered them to produce. *Compare, e.g.*, Dkt 102 (stating that "Defendants have complied with the court's order"); *with*, Tr. of Hearing on Motion for Sanctions (admitting that some Defendants, including Defendant Witherspoon, had never been asked to conduct a search despite being ordered to do so, and admitting that Defendants had never conducted a full email search despite being ordered to produce responsive communications).

And in response to Plaintiff's *second* motion for sanctions, Defendants initially claimed that they had produced all outstanding policies. Dkt. 158 at 5. After Plaintiff's counsel repeatedly contacted Defendants' counsel explaining that their records did not match Defendants' counsel's representations to the Court, Defendants' counsel repeatedly promised Plaintiff's counsel that their representations were accurate and that they had produced the outstanding documents on or before the deadline ordered by the Court. *See* Dkt. 177 at 3–4.

Only after Plaintiff's counsel spent nearly 20 hours working to prove that Defendants' representations to the Court were false did Defendants state that they had finally decided to get "to the bottom of things" and realized that they had never produced the outstanding documents. *Id.* Defendants then filed an amended response to Plaintiff's Second Motion for Sanctions, simply

8

stating that "Defense counsel later learned that . . . the policies in question were inadvertently not produced on June 16, 2023, as previously believed." Dkt. 167, at 5. They did not include the information that they had forced Plaintiff's counsel to incur nearly 20 hours of attorneys' fees before they admitted that their representations had been false, or that they only attempted to determine whether their representations to the Court were true *after* Plaintiff provided significant proof that those representations were false. It appears that they did not attempt to verify their claims prior to filing them. Indeed, even in Defendants' amended response, they wrongly told the Court that Plaintiff's counsel had not alerted them to the missing documents until August 22, 2023, when actually Plaintiff's counsel had done so on August 16, and they told the Court that they had produced the outstanding documents on August 22, when they actually did not do so until August 28—apparently making it seem that Defendants had immediately corrected their error when it actually took them nearly two weeks to do so. *See* Dkt. 167 at 5, 177 at 3–4. This is all in addition to other misrepresentations regarding Defendants' search for and production of discovery and misrepresentation of how they prepared their Rule 30(b)(6) witnesses, which are laid out in more detail in Plaintiff's briefing on her Motion to Compel and her two motions for sanctions.

Like these previous misrepresentations, Defendants' counsel has now withheld crucial facts regarding the attendance of the insurance carrier and the terms of an insurance policy that would have informed Plaintiff's counsel's position during mediation. Such predictable dishonesty to an opposing party and this Court merits sanction.

IV. **Conclusion**

Plaintiff respectfully requests that the Court sanction Defendants for the costs that Plaintiff's counsel incurred in preparing for and attending a settlement conference that did not have

9

all required parties because of Defendants' misconduct as well as for the costs associated with litigating this sanctions motion.

Dated: October 6, 2023                                          Respectfully submitted,

/s/ *Lauren Kuhlik*
Lauren Kuhlik (*By Special Appearance*)
Hassan Zavareei (*By Special Appearance*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW, Ste 1010
Washington, D.C. 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: lkuhlik@tzlegal.com
       hzavareei@tzlegal.com

Erika K. Wilson
N.C. Bar. No. 45020
Elizabeth Guild Simpson
N.C. Bar No. 41596
**University of North Carolina School of Law Clinical Programs**
102 Ridge Road
Chapel Hill, NC 27514
Telephone: (919) 962-2552
Fax: (919) 962-2883
Email: wilsonek@live.unc.edu
       elizabeth@emancipatenc.org

*Local Rule 83.1 (d) Counsel for Plaintiff*

April N. Ross (*By Special Appearance*)
NC Bar No. 35478
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 624-2500
Email: aross@crowell.com

Oren Nimni (*By Special Appearance*)
D Dangaran (*By Special Appearance*)
**Rights Behind Bars**
416 Florida Avenue, NW #26152

Washington, D.C. 20001  
Phone: (202) 540-0029  
Email: oren@rightsbehindbars.org  
　　　　d@rightsbehindbars.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2023, a copy of the foregoing was filed and served via the Court's CM/ECF system, which shall separately serve via electronic mail upon all counsel of record.

                                                                                                             */s/ Lauren Kuhlik*
                                                                                                             Lauren Kuhlik