THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE NO. 5:21-CT-03270-D

TRACEY EDWARDS,

        Plaintiff,

v.

TODD ISHEE, et al.,

        Defendants.

**DEFENDANTS'
STATEMENT OF UNDISPUTED
MATERIAL FACTS**

NOW COME Defendants, by and through undersigned counsel, pursuant to Local Civil Rule 56.1(a)(1), and respectfully submits this Statement of Undisputed Material Facts as to which Defendants contend there is no genuine dispute. The undisputed material facts, based on the record evidence, are as follows:

    1.    In 2017 and 2019, Plaintiff was arrested for trafficking heroin and was incarcerated at the Mecklenburg County Jail. [DE-39, ¶ 21; DE-248-1, ¶ 4]

    2.    Plaintiff was transferred to the North Carolina Correctional Institution for Women (NCCIW) on May 14, 2019. [DE-39, ¶ 22] In 2019, NCCIW was one of the prison facilities under the umbrella of the Department of Public Safety. After a reorganization, NCCIW is now under the Department of Adult Corrections. [Witherspoon Decl. ¶ 5]

    3.    The Department issues state-wide policies that apply to all facilities under the DAC umbrella. Each facility then promulgates its own policies, Standard Operating Procedures (SOPs) and Post Orders to implement the state-wide policy at that particular facility. [Witherspoon Decl. ¶¶ 5-10; Amos Decl. ¶¶ 5-8]

## MAT for Pregnant Inmates and the Use of Restraints during Transport

1. Plaintiff was addicted to opioids when she arrived at NCCIW. [*Id.* at ¶ 21; DE-248-1, ¶ 4]

2. During intake at NCCIW, Plaintiff underwent a medical exam and learned that she was pregnant. [*Id.* at ¶ 22; DE-248-1, ¶ 6]

3. Opioid withdrawal in pregnancy can result in spontaneous abortion or premature delivery. [Alexander Decl. ¶ 7; Junker Decl. ¶ 13; Amos 1.6.23 Dep. Tr. at 93:15-94:6]

4. To protect the fetus, NCCIW provided medicine-assisted treatment ("MAT"). *Id.* This means Plaintiff received a daily, regulated dose of opioid medication to prevent withdrawal. [DE 251-3; Alexander Decl. ¶ 7-8; 10, Junker Decl. ¶ 14; Amos Decl. ¶¶ 16-19; Amos 1.6.23 Dep. Tr. at 75:1-14, 93:15-94:6]

5. Plaintiff was prescribed Suboxone for the length of her pregnancy and was transported daily to Southlight Clinic for medication administration, until NCCIW began offering MAT on-site. [DE-248-1, ¶ 9; DE 251-3; Alexander Decl. ¶ 7-8; 10, Junker Decl. ¶ 14; Amos Decl. ¶¶ 16-19; Amos 1.6.23 Dep. Tr. at 75:1-17]

6. Pursuant to DAC policy *F.1100 Transporting Offenders*, NCCIW SOP *D.1800 Offender Restraints* and NCCIW SOP *H.0300 Use of Force and Restraints*, any time an offender is outside the security confines of the correctional facility, she must restrained. There are specific exceptions to these policies and SOPs for pregnant offenders and offenders who have recently given birth. [DE 249-13; DE 249-14; DE 249-16; Ragano Decl. ¶¶ 5-12; Brodie Decl. ¶¶ 5-12; Williams Decl. ¶¶ 5-12; Lynch Decl. ¶¶ 5-14]

7. Non-pregnant offenders are restrained with handcuffs at the wrists behind the back, at the ankles with leg irons, with both attached to a belly chain, during transport to and from a correctional facility. [DE 249-13]

8. Pursuant to the policies and SOPs in effect at the time of Plaintiff's pregnancy, pregnant offenders were not restrained by leg, waist, or ankle restraints during escorts or transports. [DE 249-13 at 8; DE 249-14 at 4-6; DE 249-16 at 4. DAC Policy *F.1100 Transporting Offenders* stated, "wrist restraints shall only be applied in the front and in such a way that the pregnant offender may be able to protect herself and the fetus in the event of a fall." [DE 249-13 at 8; Lynch Decl. ¶ 10; Williams Decl. ¶ 8; Brodie Decl. ¶ 8; Ragano Decl. ¶ 8]

9. During transport to South Light, Plaintiff was restrained at the wrists, in the front of her body, to prevent injury to the fetus in case of a fall. [DE-248-1 ¶ 9; Williams Decl. ¶¶ 14-16; Brodie Decl. ¶¶ 14-16. Brodie Dep. Tr., at 64:2-65:3]

10. On December 1, 2019, NCCIW initiated an in-house MAT program. Plaintiff continued to receive her daily, regulated dose of opioid medication, but no longer required transport to the clinic for medication administration. [Alexander Decl. ¶ 8; Amos Decl. ¶¶ 17-18]

**Plaintiff's Mental Health Background and Treatment**

11. When Plaintiff entered NCCIW, she had a history of mental health conditions, including bipolar disorder, ▮▮▮▮▮▮▮▮▮▮, anxiety disorder and ADHD, for which she had been prescribed medication. She also reported a history of ▮▮▮▮▮▮▮▮▮▮, and substance abuse, including Opioid Use Disorder. [DE 248-1 ¶¶ 7-8; Sheitman Decl. ¶ 5, Ex. A, Ex. B]

3

12. Plaintiff also had a history of not taking certain medications she had been prescribed or following through on treatment. For example, ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. [Sheitman Decl. ¶ 5, Ex A, Ex B]

13. Upon intake, ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████, but did not want to take her mental health medications while she was pregnant. [DE 248-1 ¶ 8; Sheitman Decl. ¶ 5, Ex. A]

14. Plaintiff was referred for ████████████████████████████████ ████████████████████████████. [Sheitman Decl. ¶¶ 5, 7; Ex A]

15. ████████████████████████████████████████, Plaintiff reported feeling stable and informed the provider that she had decided to stop taking mental health medications. The provider's notes state that Plaintiff reported "████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████." [DE 248-1 ¶ 8; Sheitman Decl. ¶¶ 5, 7, Ex A] Plaintiff continued to receive daily MAT at SouthLight. [DE 248-1]

**Use of Restraints on Pregnant Offenders during Labor and Delivery and Postpartum**

16. Different DAC and NCCIW policies and SOPs govern the use of restraints during transport and during hospital admission. [DE 249-13, DE 249-14, DE 249-16]

17. Although DAC and NCCIW policy required that pregnant offenders only be restrained at the front of the body by the wrists during transport, if a pregnant offender was admitted to the hospital, NCCIW SOP *D.1800 Offender Restraints* provided that the offender should be restrained with one hand secured to the bed/gurney with a handcuff and the opposite leg secured to the bed/gurney with a leg iron. Handcuffs or leg irons could be removed if medical staff requested their removal to complete a medical procedure, but this had to be reported by the Officer to the OIC. [DE 249-14 at 7]

18. Pursuant to the policies in effect at the time, all restraints were removed from a pregnant offender during active labor and delivery. After the birth of the child and the medical care associated with childbirth has been completed, the offender would be restrained as any non-pregnant offender would be, except that handcuffs would be removed in order for the offender to hold her newborn child. Hand restraints could not be applied while she was bonding and feeding the baby. However, the offender had to remain seated while holding the newborn, with her leg restrained to a bed or chair. [DE 249-14 at 7; DE 249-16 at 4]

19. Aside from these and other specific exceptions enumerated in the policies and SOPs, offenders are not permitted to be unrestrained while lying in a hospital bed or treatment gurney. [DE 249-14 at 7]

20. NCCIW correctional officers receive online and in-person training on all DAC policies and NCCIW policies, SOPs and Post Orders. At the beginning of each shift, the Officer in Charge (OIC) of that shift notifies all officers of any updates to policies and/or procedures. Officers sign a log confirming they have reviewed the specific guidelines for their assignment or Post for that shift, and complete an Outside Activity Log if they are off-site with an offender (e.g., transporting an offender to a medical appointment). If any officer has a question about how to

5

implement the policies, SOPs or Post Orders, or believes deviation is necessary at any point during the shift, the officer must contact the OIC. These communications are documented. [Witherspoon Decl. ¶¶ 9-10; Ragano Decl. ¶¶ 5, 14; Brodie Decl. ¶¶ 5, 13, 16; Williams Decl. ¶¶ 5, 13, 16; Lynch Decl. ¶¶ 5-7, 15]

21. For example, on November 22, 2019, a pregnant offender (not Plaintiff) was being treated at WakeMed. A hospital administrator contacted NCCIW because the medical staff wanted the pregnant offender's restraints removed so that she could be ambulatory, but because the offender was not in labor, removing the restraints at that time was contrary to DAC and NCCIW policy. Deputy Warden David May spoke with hospital staff and approved the removal of all restraints for this offender. Deputy May communicated this up the chain of command to then-Warden Benita Witherspoon and DAC Central Region Director Cynthia Thornton. [Witherspoon Decl. ¶ 15; DE 249-21 at 5-6; DE 249-23]

22. During that time period, Warden Witherspoon had been discussing changes to the policies and procedures concerning the use of restraints on pregnant offenders with Regional Director Thornton and others at DAC. However, no DAC policies had been revised as of November 2019. [Witherspoon Decl. ¶¶ 11-12]

23. Director Thornton sent an email on November 22, 2019, at 2:35pm to Warden Witherspoon, copying Deputy Warden May and others at NCCIW and DAC. The subject line of the email is, "Pregnant Female Offender Temporary Directive." In that email, Director Thornton wrote:

> Be advised that the restraints have been removed from [*patient name redacted*]. She should remain unrestrained while in pre and active labor. It is noted that could be for several weeks.

6

It went on to explain that revisions to the policy were forthcoming but the interim directive was that offenders in their third trimester should not be restrained, even if they are not in pre or active labor. This directive was applicable to offenders who were admitted to the hospital for medical treatment. [Witherspoon Decl. ¶¶ 15-17; DE 249-21 at 4-6]

24. That same day, Deputy Warden May shared Thornton's temporary directive with the OICs so they could notify the officers when they reported to their next shift. One of the OICs asked if this meant pregnant offenders in their third trimester should not be restrained during transport. Director Thornton clarified that DAC Policy *F.1100 Transporting Offenders* should be followed. [Witherspoon Decl. ¶ 17; DE 249-21 at 4-6]

25. The directive to OICs and officers was that wrist restraints should still be applied in the front during transport of all pregnant offenders–even pregnant offenders in their third trimester–consistent with the version of DAC Policy *F.1100 Transporting Offenders* in effect at that time. [Witherspoon Decl. ¶ 18; DE 249-21 at 4-6]

**Plaintiff's Labor, Delivery, and Hospital Admission (12/19/2019—12/22/2019)**

26. On December 19, 2019, Plaintiff was transported to UNC-Chapel Hill for induction of labor ▬▬▬▬▬▬▬▬▬▬. She was 39 weeks pregnant. [DE 39, ¶ 24; DE 248-1 ¶ 11; DE 251-2 at 29, 146, 152, 158]

27. During transport, Plaintiff was restrained only at the wrists, in the front of her body, consistent with DAC and NCCIW policies and procedures. [DE 248-1 ¶ 11; DE 249-13, at 8; DE 249-14 at 4-6; DE 249-16 at 4].

28. Officer Tianna Lynch monitored Plaintiff from roughly 7:00pm on December 19, 2019, to 7:00am on December 20, 2019. Pursuant to the applicable policies and SOPs, Plaintiff's

7

wrist restraints were removed when induction began. [DE 249-13 at 8; DE 249-34 at 2-3; Lynch Decl. ¶¶ 15-17; Lynch Dep. Tr., pp 50-51; Ragano Decl. ¶ 18]

29. Officer Lorafaith Ragano relieved Officer Lynch at 7:00am on December 20, 2019, and monitored Plaintiff until 7:00pm on December 20, 2019. When Officer Ragano arrived at the hospital at 7:00am on December 20, 2019, Plaintiff was not in any restraints. [Ragano Decl. ¶ 18, DE 249-34 at 3] Officer Ragano did not apply any restraints during Plaintiff's labor or delivery. [Ragano Decl. ¶ 21]

30. Plaintiff delivered her baby on December 20, 2019. [DE-248-1; Ragano Decl. ¶ 20; DE 249-34 at 4]

31. About two hours after delivery, the nursing staff prepared Plaintiff and her baby to be transferred to the maternity ward on the fifth floor. [Ragano Decl. ¶ 22; DE 249-34 at 4]

32. Officer Ragano escorted Plaintiff in a wheelchair to her recovery room on the fifth floor. Officer Ragano cuffed Plaintiff's wrist to the wheelchair during the escort. Once they arrived in the recovery room, Officer Ragano followed the normal practice of cuffing Plaintiff's opposite wrist and leg to the bed. The wrist restraint was applied to Plaintiff's right arm because the IV was in her left arm. Officer Ragano removed the wrist restraint when a nurse brought Plaintiff's baby into the room. [Ragano Decl. ¶ 22; DE 249-34 at 4; DE-248-1 ¶ 16]

33. Officer Nikita Dixon relieved Officer Ragano around 7:00pm on December 20, 2019. When Officer Ragano left and Officer Dixon took over, Plaintiff had one leg restrained. No other restraints, including wrist restraints, were applied. Dixon did not adjust Plaintiff's restraints during her shift. [Ragano Decl. ¶ 22; Dixon Dep. Tr. 41:24-42:5; DE 249-34 at 5-7; DE-248-1 ¶ 17]

34. Officer Ragano took over around 7:00am on December 21, 2019. When a nurse informed Officer Ragano that Plaintiff should walk around, Officer Ragano contacted the OIC and documented the reason Plaintiff's ankle restraint was being removed. Ragano and the nurse escorted Plaintiff to the hall for a ten-minute walk. [Ragano Decl. ¶¶ 15-16; DE 249-34 at 8-9; DE-248-1 ¶ 17]

35. Plaintiff never complained about any pain or discomfort related to the restraints. If she had complained, or if the medical staff had asked for them to be removed, the restraints would have been adjusted or removed. [Ragano Decl. ¶ 23, DE 249-34 at 8-9]

36. While Plaintiff was at the hospital, she received ▉▉▉▉▉▉▉▉▉▉▉▉▉▉. [Sheitman Decl. ¶ 4, Ex. B]

37. Upon discharge, Plaintiff was given a 14-day prescription for ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. [Sheitman Decl. ¶ 6, Ex. B]

38. When Plaintiff was transported from the hospital back to NCCIW, she was placed in restraints consistent with the policies and SOPs applicable to a non-pregnant offender during transport in effect at the time. [DE-248-1 at 21]

**Plaintiff's Medical Care at NCCIW After Hospital Discharge**

39. Plaintiff was discharged from the hospital and returned to NCCIW on December 22, 2019. She stayed in the inpatient medical unit (the "Robin Unit") where she could remain under the care and supervision of the NCCIW medical staff 24 hours a day. Plaintiff's physical, mental and emotional wellbeing were monitored by the NCCIW medical staff during this time. [DE 39 ¶ 112; DE-248-1 ¶ 21; Sheitman Decl. ¶ 6; Amos Decl. ¶ 19; Amos 1.6.23 Dep. Tr. at 102:14-19]

40. Because Plaintiff was no longer pregnant, she was no longer eligible for MAT. NCCIW medical staff began tapering Plaintiff's daily, regulated dose of opioid medication. ██████████ . [Amos Decl. ¶¶ 20, 22; Amos Dep. Tr. at 100:4-20; Alexander Decl. ¶ 10; DE 251-3; DE 248-1, ¶ 27; DE 251-2 at 14]

41. Plaintiff requested continuation of Suboxone, but the request was denied. NCCIW was not authorized to provide Medication for OUD (MOUD) to non-pregnant inmates. Only a licensed Opioid Treatment Provider can offer MOUD. [Alexander Decl. ¶ 9-10, DE 251-3; Amos Decl. ¶¶ 16-17; Junker Decl. ¶ 15]

42. Fourteen days after Plaintiff's discharge, her prescriptions for ██████ expired. [DE-248-1 ¶ 28; Sheitman Decl. ¶ 6]

43. Plaintiff was evaluated by NCCIW medical providers on ██████ (roughly fifteen days after her discharge from UNC). Plaintiff's ██████ . [DE 251-2 at 64-72]

44. The NCCIW medical provider requested Plaintiff's hydroxyzine prescription be renewed, noting that it expired the day before (January 5, 2020). [DE 251-2 at 67]

45. When Plaintiff was seen by a NCCIW health provider on January 15, 2020, Plaintiff reported that ██████ . [Sheitman Decl. ¶ 7, Ex A]

46. In February 2019, Plaintiff ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." The medical records confirm that Plaintiff was caught with Suboxone in her bra during a search in January and received an A charge. [Sheitman Decl. ¶ 8, Ex A]

47. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" [Sheitman Decl. ¶ 9, Ex. A]

48. At a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. [Sheitman Decl. ¶ 10, Ex A]

49. In May 2020, Plaintiff saw an NCCIW ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

11

[Sheitman Decl. ¶ 11, Ex A]

50.     Plaintiff was released from NCCIW on June 4, 2021. [DE 39, ¶ 9]

Respectfully submitted this the 17th day of November, 2023.

JOSHUA H. STEIN
Attorney General


/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General
N.C. State Bar No. 45005
Email: lmchenry@ncdoj.gov


/s/ Bettina J. Roberts
Bettina J. Roberts
Special Deputy Attorney General
N.C. State Bar No.  43356
Email:  bjroberts@ncdoj.gov


N.C. Department of Justice
9001 Mail Service Center
Raleigh, North Carolina 27699-9001
Telephone:  (919) 716-6540
Facsimile:  (919) 716-6761
*Counsel for Defendants*


**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed **DEFENDANTS' STATEMENT OF MATERIAL FACTS** with the Clerk of the Court using the CM/ECF system, which will provide an electronic copy to:

Erika K. Wilson
UNC School of Law Clinical Programs
102 Ridge Road;
Chapel Hill, NC 27524
Email: wilsonek@email.unc.edu

Lauren A. Kuhlik
Tycko & Zavareei LLP
1828 L. Street NW; Suite 1000
Washington, DC 20036
Email: lkuhlik@tzlegal.com

April N. Ross
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
Email: aross@crowell.com

Elizabeth Guild Simpson
EMANCIPATE NC
P.O. Box 309
Durham, NC 27702
919-682-1149
Email: elizabeth@emancipatenc.org

D. Dangaran
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
202-540-0029
Email: d@rightsbehindbars.org

This the 11th day of October, 2023.

/s/ Bettina J. Roberts
Bettina J. Roberts
Special Deputy Attorney General