THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE NO. 5:21-CT-03270-D

| | |
|---|---|
| TRACEY EDWARDS,<br><br>      Plaintiff,<br><br>v.<br><br>TODD ISHEE, et al.,<br><br>      Defendants. | **MEMORANDUM OF LAW<br>IN SUPPORT OF<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

NOW COME Defendants, by and through undersigned counsel, and respectfully move the Court for summary judgment on Plaintiff's claims pursuant to Fed. R. Civ. P. 56(a), and respectfully submit this Memorandum of Law in support of Defendants' Motion for Summary Judgment [DE 267].

## INTRODUCTION

This lawsuit alleges violations of an offender's constitutional rights while under the supervision of medical professionals and correctional staff at the North Carolina Correctional Institution for Women (NCCIW). Specifically, Plaintiff alleges the use of restraints during her pregnancy, the discontinuation of daily Suboxone treatment after she delivered her baby, and the denial of certain postpartum mental health treatment violated her rights under the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act. However, Plaintiff's claims are barred by Eleventh Amendment immunity or the doctrine of qualified immunity. Moreover, after an

extensive discovery process, Plaintiff has failed to produce sufficient evidence to support her claims. No genuine issue of material fact exists, and based on the authorities and arguments presented below, judgment in Defendants' favor is proper as a matter of law.

## STATEMENT OF THE CASE

Plaintiff commenced this litigation on September 2, 2021. [DE 1] Plaintiff's Second Amended Complaint, filed on April 7, 2022, is the operative complaint in this action. [DE 39] Plaintiff brings twenty-one claims against thirteen Defendants, which can be summarized as follows:

- Violation of the Eighth Amendment, accusing Defendants of cruel and unusual punishment for using restraints on Plaintiff during her pregnancy, transport to the hospital, labor and delivery, and postpartum period;

- Violation of the Eighth Amendment, the ADA, and the Rehabilitation Act, for tapering Plaintiff off Medication for Opioid Use Disorder following childbirth and the immediate postpartum period; and

- Violation of the Eighth Amendment, the ADA, and the Rehabilitation Act, alleging that Defendants failed to provide necessary medical and mental health treatment postpartum.

[DE 39] For illustrative purposes, Defendants also submit Table 1A to summarize Plaintiff's various claims against individual capacity and official capacity Defendants. *See* Table 1A, p 3.

Plaintiff seeks a declaratory judgment, injunctive relief, compensatory damages, punitive damages, costs and attorneys' fees. [DE 39]

| Table 1A | | | |
|---|---|---|---|
| **SUMMARY OF PLAINTIFF'S CLAIMS** | | | |
| **Defendant** | **Official Capacity** | **Individual Capacity** | **Claims** |
| DPS Secretary Ishee | X | | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD<br>• ADA violation for denial of MOUD<br>• Rehabilitation Act violation for denial of MOUD<br>• ADA violation for denial of mental health treatment postpartum<br>• Rehabilitation Act violation for denial of mental health treatment postpartum |
| Benita Witherspoon | | X | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD |
| Warden Perry | X | | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD |
| Dr. James Alexander | X | X | • Eighth Amendment violation for denial of MOUD |
| Dr. Gary Junker | X | X | • Eighth Amendment violation for denial of MOUD |
| Dr. Elton Amos | X | X | • Eighth Amendment violation for denial of MOUD<br>• Eighth Amendment violation for denial of mental health treatment postpartum |
| Kavona Gill | | X | • Eighth Amendment violation for shackling |
| Tamara Brown | | X | • Eighth Amendment violation for shackling |
| Nikitia Dixon | | X | • Eighth Amendment violation for shackling |
| Tammy Williams | | X | • Eighth Amendment violation for shackling |
| Shelda Brodie | | X | • Eighth Amendment violation for shackling |
| Tianna Lynch | | X | • Eighth Amendment violation for shackling |
| Lorafaith Ragano | | X | • Eighth Amendment violation for shackling |

## UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(c), Defendant incorporates by reference its Statement of Undisputed, Material Facts [DE 268], filed contemporaneously with this memorandum of law in support of Defendants' motion for summary judgment.

Summary judgment is proper where the pleadings, depositions, affidavits, and other materials, when considered in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 283 (4th Cir. 2004). A fact is only "material" if proof of its existence or non-existence could affect the outcome of the litigation, and a dispute over such a fact is only "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

To overcome a well-supported motion for summary judgment, the nonmoving party must affirmatively demonstrate a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'").

Although the evidence is viewed in the light most favorable to the nonmoving party, any inferences drawn "must still be within the range of reasonable probability." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995) (quotation omitted). Affidavits or declarations containing self-serving assertions without objective corroboration are insufficient to survive summary judgment. *See, e.g., Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (finding no error in trial court's exclusion of several portions of plaintiff's affidavit). A plaintiff's uncorroborated allegations do not amount to evidence of "sufficient probative force to reflect a genuine issue of material fact." *Goldberg*

*v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). If the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and the suit does not warrant submission to a jury. *See Anderson*, 477 U.S. at 248-52.

## ARGUMENT

### I. Eleventh Amendment Immunity Bars Claims Brought Against Official Capacity Defendants.

A claim against a state official is a claim against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars claims brought against the state in federal court. U.S. Const. amend. XI. Therefore, Plaintiff's claims brought against Defendants in their official capacity are barred and must be dismissed as a matter of law.

The Eleventh Amendment prohibits "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Id.* Eleventh Amendment protection extends to "state agents and state instrumentalities," meaning arms of the state and state officials. *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001). Put another way, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Therefore, state officers acting in their official capacity are entitled to Eleventh Amendment immunity and summary judgment is appropriate.

Here, Plaintiff attempts to bring claims against the following state officers in their official capacities:

- Todd Ishee[1], in his official capacity as Secretary of the North Carolina Department of Public Safety (now the Department of Adult Corrections);

- Anthony Perry[2], in his official capacity as the Warden of the North Carolina Correctional Institution for Women;

- Dr. James Alexander, in his official capacity as the Healthcare Facility Health Treatment Administrator of the North Carolina Correctional Institution for Women;

- Dr. Gary Junker, in his official capacity as the Director of Health and Wellness Services of the Department of Public Safety (now DAC); and

- Dr. Elton Amos, in his official capacity as the Medical Director for the North Carolina Correctional Institution for Women.

[DE 39] All of Plaintiff's claims against these Defendants in their official capacities are barred by Eleventh Amendment immunity. *See, e.g., Will*, 491 U.S. at 71. Accordingly, Count I should be dismissed as to Defendants Ishee and Perry; Count II should be dismissed as to Defendants Ishee, Perry, Alexander, Junker and Amos; and Counts III-VII should be dismissed in their entirety. *See* Table 1B, p 7.

The official capacity Defendants (i.e., Ishee, Perry, Alexander, Junker and Amos), as extensions of the State, enjoy immunity from Plaintiff's claims. *Id.* Defendants are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(a) and these claims should be dismissed.

---

[1] The current DPS Secretary, Todd Ishee, has been substituted for the DPS Secretary at the time Plaintiff's Complaint was filed.

[2] The current Warden, Anthony Perry, has been substituted for the NCCIW Warden at the time Plaintiff's Complaint was filed.

| Table 1B | | | |
|---|---|---|---|
| **SUMMARY OF PLAINTIFF'S CLAIMS** | | | |
| **Defendant** | **Official Capacity** | **Individual Capacity** | **Claims** |
| DPS Secretary Ishee | X | | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD<br>• ADA violation for denial of MOUD<br>• Rehabilitation Act violation for denial of MOUD<br>• ADA violation for denial of mental health treatment postpartum<br>• Rehabilitation Act violation for denial of mental health treatment postpartum |
| Benita Witherspoon | | X | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD |
| Warden Perry | X | | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD |
| Dr. James Alexander | X | X | • Eighth Amendment violation for denial of MOUD |
| Dr. Gary Junker | X | X | • Eighth Amendment violation for denial of MOUD |
| Dr. Elton Amos | X | X | • Eighth Amendment violation for denial of MOUD<br>• Eighth Amendment violation for denial of mental health treatment postpartum |
| Kavona Gill | | X | • Eighth Amendment violation for shackling |
| Tamara Brown | | X | • Eighth Amendment violation for shackling |
| Nikitia Dixon | | X | • Eighth Amendment violation for shackling |
| Tammy Williams | | X | • Eighth Amendment violation for shackling |
| Shelda Brodie | | X | • Eighth Amendment violation for shackling |
| Tianna Lynch | | X | • Eighth Amendment violation for shackling |
| Lorafaith Ragano | | X | • Eighth Amendment violation for shackling |
| Legend: Claim is barred by Eleventh Amendment immunity. | | | |

## II.    Qualified Immunity Bars Plaintiff's Claims Brought Against Individual Capacity Defendants.

Under the doctrine of qualified immunity, claims brought against state actors for individual liability are also barred so long as those individuals' actions did not violate

clearly established statutory or constitutional rights of which a reasonable person would have known. *See, e.g., Danser v. Stansberry,* 772 F.3d 340, 345 (4th Cir. 2014) (reversing district court's denial of qualified immunity for prison officials). This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

When determining whether qualified immunity applies, courts follow the two-step approach outlined by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), as modified by the Court's later decision in *Pearson*. *See Danser*, 772 F.3d at 345. First, a court must determine whether the undisputed facts demonstrate that the defendant's actions violated the plaintiff's rights. *Id.* at 346 (citations omitted). "When the plaintiff has satisfied this initial step, a court must determine whether the right at issue was clearly established at the time of the events in question." *Id.* (quotations and citations omitted). These determinations are questions of law and appropriately made at the summary judgment stage by a court, not at a trial by a jury. *See, e.g., Willingham v. Crooke,* 412 F.3d 553, 560 (4th Cir. 2005).

Plaintiff's remaining claims are brought against the following individual capacity Defendants under three theories of liability:

- Benita Witherspoon, Kavona Gill, Tamara Brown, Nikitia Dixon, Tammy Williams, Shelda Brodie, Tianna Lynch, and Lorafaith Ragano for violations of Plaintiff's Eighth Amendment rights related to the use of restraints (Count I);

- Benita Witherspoon, Dr. James Alexander, Dr. Gary Junker, and Dr. Elton Amos for violations of Plaintiff's Eighth Amendment rights related to the denial of MOUD (Count II); and

- Dr. Elton Amos, to the extent this claim is brought against Dr. Amos in his personal capacity, for violations of Plaintiff's Eighth Amendment rights related to the alleged denial of mental health treatment postpartum (Count V).

[DE 39] To present these claims to a jury, Plaintiff must be able to demonstrate that she had a clearly established constitutional right that was violated by each individual-capacity Defendant. Otherwise, these Defendants are entitled to qualified immunity and Plaintiff's claims fail as a matter of law. *E.g.*, *Danser,* 772 F.3d at 345.

As explained below, there is no support for Plaintiff's claims that her rights were violated or that those rights were "clearly established" at the time of the alleged violation. The individual-capacity Defendants acted reasonably at all times, and their actions did not violate Plaintiff's clearly established rights. The remaining claims, i.e., the ones not barred outright by the Eleventh Amendment, are subject to dismissal as a matter of law under the doctrine of qualified immunity. *See, e.g., Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020) (affirming district court's dismissal of plaintiff's claims for damages against defendants in their individual capacities on qualified immunity grounds).

## A. A pregnant inmate does not have a clearly established Eighth Amendment right to be free from restraints during transport, labor, or after delivery.

The first step in the qualified immunity analysis is to determine whether the undisputed facts show that Defendants' actions violated Plaintiff's Eighth Amendment rights. Plaintiff alleges that she was restrained during transport, labor, and within one hour of childbirth. [DE 39, ¶¶ 25-34] However, the record evidence demonstrates that Plaintiff

was only restrained with handcuffs in the front during transport; was not restrained at all during labor and delivery, including while receiving intravenous medication, or when medical staff requested the restraints be removed; and was only restrained by only one leg when holding, feeding, and bonding with her newborn while a patient at UNC Hospital, a nonlocked facility. SUMF ¶¶ 8-9, 17-19, 26-29, 32-34, 38. There is no legal authority to support Plaintiff's position that the use of restraints in these settings violated Plaintiff's rights, and her claims should be dismissed as a matter of law.

1. **Even assuming, without conceding, that Plaintiff was restrained by handcuffs or leg irons during labor, the use of restraints during labor is not a violation of Plaintiff's clearly established Eighth Amendment rights.**

The allegations in the Second Amended Complaint that Plaintiff was restrained either by handcuffs or leg shackles during labor are unsubstantiated. She has failed to produce any evidence to support these allegations, and the record evidence reflects that she was not restrained at all during labor or delivery. SUMF ¶¶ 28-29. However, even assuming Plaintiff could produce evidence of this allegation sufficient to overcome summary judgment, there is no binding case law in this jurisdiction holding that the use of restraints during labor equates to a violation of Plaintiff's Eighth Amendment rights.

In fact, the only case addressing the use of restraints on pregnant offenders in this district held that the use of restraints during labor, delivery, and shortly thereafter did <u>not</u> violate a clearly established right. *Fain v. Rappahannock Reg'l Jail*, No. 3:12cv-293-JAG, 2013 U.S. Dist. LEXIS 86384, at *14 (E.D. Va. June 19, 2013). In that case, the plaintiff asserted that she was kept in shackles in some form or another throughout her labor and

delivery. *Id.* at *5. The officers averred that they followed policy and kept the plaintiff restrained until medical personnel requested that the restraints be removed. *Id.* The district court found that, even treating plaintiff's version of the facts as true ("farfetched as it is"), plaintiff had failed to present any controlling precedent holding that she had a clearly established right to be free from the use of restraints during labor and delivery. *Id.* at *14-16. Accordingly, defendants were entitled to qualified immunity and plaintiff's claims were barred. *Id.* at *16-17.

Since *Fain* was decided, Defendants note that courts in other jurisdictions have held that the use of restraints during labor violates a clearly established right. *See Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563 (6th Cir. 2013); *Nelson v. Corr. Med. Servs.*, 583 F.3d 522 (8th Cir. 2009); *Brawley v. Washington*, 712 F. Supp. 2d 1208 (W.D. Wash. 2010). These decisions, while not controlling, may of course be instructive to this Court's analysis. However, in order for this court to even consider those decisions in its analysis, it would first have to find that Plaintiff met her burden to point to specific evidence in the record, beyond her own self-serving declaration, to support her allegation that she was restrained during labor. *Accord Smith v. Perry*, No. 1:16-cv-396, 2018 U.S. Dist. LEXIS 131047, at *54 (M.D.N.C. Aug. 2, 2018) (granting summary judgment on plaintiff's constitutional claim because bald assertions and conclusory allegations, unsupported by record evidence, fail to provide any basis from which a reasonable fact finder could rule in her favor); *Tillery v. Borden*, No. CBD-07-1092, 2010 U.S. Dist. LEXIS 92501, at *20-21 (D. Md. Sept. 3, 2010) (granting summary judgment because plaintiff's "bald assertion is

insufficient to overcome a motion for summary judgment which is supported by record evidence.").

Even if Plaintiff could point to record evidence supporting her allegation that she was restrained during labor, which she cannot, the Fourth Circuit has not recognized a clearly established Eighth Amendment right to be free from restraints during labor, and Defendants would be entitled to qualified immunity on this claim.

### 2. A pregnant inmate does not have a clearly established Eighth Amendment right to be free of restraints during transport.

The undisputed material facts demonstrate that, while pregnant, Plaintiff was restrained during transport to SouthLight and UNC Hospital, where she received medical treatment. There is no case law to support Plaintiff's position that the use of restraints during transport violates her Eighth Amendment rights. Defendants are entitled to qualified immunity and Plaintiff's claim should be dismissed as a matter of law.

The most relevant decision of which Defendants are aware involving a pregnant inmate challenging the use of restraints during transport is *Brown v. Cumberland Cnty.*, 557 F. Supp. 3d 169 (D. Me. 2021). There, the plaintiff alleged that correctional officers violated her constitutional rights when they handcuffed her at 35 weeks pregnant during transport from the prerelease center to the main jail while accompanied by a correctional officer. *Id.* at 177. State law and the correctional facility's policy prohibited the use of restraints on pregnant inmates. *Id.* at 174-75. Defendants asserted that qualified immunity barred plaintiff's claim because they had not violated a clearly established constitutional right. *Id.* at 176.

The district court explained that the central question in determining whether a right was clearly established is "whether the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (internal quotations and citation omitted). "The legal principle at issue must have a sufficiently clear foundation in then-existing precedent," the court went on, "and it must be dictated by controlling authority or a robust consensus of cases of persuasive authority–not just suggested by precedent." *Id.* at 176-77 (internal quotations and citations omitted).

The district court concluded that the plaintiff failed to "identify a single case in which a court has held that it was unconstitutional to handcuff a pregnant woman who is not in labor or immediately post-partum." *Id.* at 178-79. Even acknowledging that state law in Maine prohibited the use of restraints on a pregnant inmate at the time of the facts giving rise to the suit (which is not the case here), the court held that, "[w]ithout case law that establishes widespread acceptance of a federal constitutional right, state law is not enough." *Id.* at 179.

Plaintiff here faces the same reality as the plaintiff in *Brown*: there is simply no clear legal foundation or controlling authority dictating that the use of restraints on a pregnant inmate during transport violates the inmate's Eighth Amendment rights.

Moreover, even a facility or agency policy prohibiting the alleged conduct by state actors is inadequate to establish a violation of a clearly established constitutional right. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."). Therefore, even if Defendants had violated DAC and/or

NCCIW policy concerning the use of restraints on pregnant inmates, that evidence would still be insufficient to support an Eighth Amendment violation. *Id; see also Brown,* 557 F. Supp. 3d at 179 (quoting *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020) ("While a violation of state law may bolster the plaintiff's argument that a reasonable officer in the officer's circumstances would have believed that his conduct violated the Constitution it does not, in and of itself, establish a constitutional violation.") (cleaned up)). Nor does the fact that the DAC policy has changed since Plaintiff's incarceration serve as evidence that the officers' conduct violated Plaintiff's constitutional rights. *Fain*, 2013 U.S. Dist. LEXIS 86384, at *16 ("That the defendants changed their approach does not demonstrate that their initial policy violated the Eighth Amendment. At best, it shows a willingness to make a change that seems reasonable, although not constitutionally required.")

In fact, Defendants' actions were consistent with DAC policy. Policy *F.1100, Transporting Offenders* expressly allowed the use of wrist restraints "during any internal escort or external transport" of a pregnant offender. [DE 249-13] The applicable policy dictated that "wrist restraints shall only be applied in the front and in such a way that the pregnant offender may be able to protect herself and the fetus in the event of a fall." SUMF ¶ 8. Officer's shift notes and testimony from various individuals who accompanied and/or observed Plaintiff during her incarceration demonstrate that while pregnant, Plaintiff was only restrained using handcuffs on her wrists, placed at the front of her body, during transport to an outside facility for medical treatment. SUMF ¶ 9, 27.

Once Plaintiff was admitted to the hospital, NCCIW's SOP *D.1800 Offender Restraints* and NCCIW's SOP *H.0300 Use of Force and Restraints* outlined different

guidelines around the use of restraints on a pregnant offender. SUMF ¶¶ 6, 17-19, 28-34.

Upon discharge from the hospital, Plaintiff was no longer pregnant and thus would have

been subject to any policies and SOPs applicable to non-pregnant offenders. SUMF ¶ 38.

At all times, the officers complied with policy regarding whether and which restraints could

be removed. SUMF ¶¶ 6, 17-19, 28-34, 38.

A plaintiff's claim must be grounded in well-established law before it can be tried

before a jury. Where a plaintiff cannot identify any controlling authority holding that the

alleged conduct violated a clearly established right, the defendants are entitled to qualified

immunity and thus dismissal of Plaintiff's claims is proper. *Brown*, 557 F. Supp. 3d at 178-

79. Here, like the inmate in *Brown*, Plaintiff cannot point to a single case where a court has

held that it was unconstitutional to restrain Plaintiff at the wrists, in front of her body,

during transport to and from the correctional facility for medical treatment. Defendants

Witherspoon, Gill, Brown, Dixon, Williams, Brodie, Lynch and Ragano are entitled to

qualified immunity and Plaintiff's Eighth Amendment claims related to shackling should

be dismissed as a matter of law. *Id.*

> ### 3. An inmate does not have a clearly established Eighth Amendment right to be free of restraints after childbirth.

For the same reasons outlined above, any claim based on the use of restraints after

Plaintiff gave birth fails as a matter of law. There is no case law that supports Plaintiff's

claim that her Eighth Amendment rights were violated when she was handcuffed to a

wheelchair during transport to her recovery room or secured to her hospital bed by one

ankle restraint while holding her newborn.  SUMF ¶¶ 32-35. *Accord Fain*, 2013 U.S. Dist.

LEXIS 86384, at *6 (holding qualified immunity barred plaintiff's Eighth Amendment claims where plaintiff remained shackled in some form at all times during labor and after delivery until she returned to the jail).

The Fourth Circuit has explained that a court need only look to the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the highest court of the state in which the case arose to determine whether a right was clearly established at the time of the alleged violation. *Id.* at *11. "[I]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." *Id.* (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. 1998), *cert. granted, judgment vacated on other grounds*, 526 U.S. 1142 (1999).

Furthermore, a clearly established right is one that is "clearly defined in a concrete factual situation such that its contours are clear, unmistakable, and applicable to the precise conduct at issue." *Id.* at *13 *(citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In *Fain,* the district court observed that at the time of the alleged unconstitutional shackling of plaintiff, there were only two cases holding that the defendants' conduct violated the Eighth Amendment (neither of which were decisions from the Supreme Court, the Fourth Circuit, or the state's highest court). *Id.* Therefore, the court determined, "the defendants could not have known that their actions violated [plaintiff's] Eighth Amendment rights. *Id.* at *15 (citations omitted). Where the legality of a particular course of action is open to reasonable dispute, an officer is not liable under the Eighth Amendment. *Id.* at *15-16. "[U]nder the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray

areas; they are liable for transgressing bright lines.'" *Id.* at \*16 (citing *Wilson v. Kittoe*, 337 F.3d 392, 402-03 (4th Cir. 2003).

Plaintiff cannot identify a single case in this or any jurisdiction holding that a pregnant offender's constitutional rights are violated when she is placed in restraints after delivery while admitted as a patient to an unlocked facility—i.e., a public hospital or other birthing facility that does not employ the security measures commonplace in a correctional facility. In *Fain*, the Court concluded that there was not a clearly established right to be free of restraints during childbirth. *Id.* at \*17. Since then, only two decisions have emerged that provide any further guidance.

First, in 2019, a Wisconsin district court considered a claim from a pregnant inmate who was restrained at the wrist and ankle during transport to the hospital and during the postpartum recovery period at the hospital. *Terry v. Cty. of Milwaukee,* 357 F. Supp. 3d 732 (E.D. Wisc. 2019). Restraints were removed to allow plaintiff to hold her baby and switched to permit the IV to be moved. *Id.* at 742. The court determined there were genuine issues of material fact regarding the constitutionality of a policy requiring the use of restraints during transport without regard for an individual inmate's medical status, security threat, or flight risk. *Id.* at 756-57. The court did not conclude, however, that the use of restraints during transport was an Eighth Amendment violation. *Id.*

In 2020, a Pennsylvania district court wrestled with the question at the Rule 12 stage, ultimately denying defendants' motion to dismiss because the plaintiff plausibly alleged that the individual-capacity defendants were aware of the substantial risk of harm of shackling Plaintiff during transport to and from the hospital, while in labor, and during

postpartum recovery, and that they were deliberately indifferent to that risk by shackling plaintiff under those circumstances. *Remlinger v. Lebanon Cty.*, No. 1:18-cv-984, 2020 U.S. Dist. LEXIS 55480, at \*25-26 (M.D. Pa. March 27, 2020)

The landscape has not changed dramatically since *Fain*. In this jurisdiction, a pregnant inmate does not have a clearly established right to be free of restraints during transport or postpartum. Defendants did not overstep a bright line or show deliberate indifference to Plaintiff's needs in their use of restraints before and after Plaintiff's labor and delivery. *See Wilson*, 337 F.3d at 403. Thus they are entitled to qualified immunity. All of Plaintiff's claims relating to the use of restraints fail and should be dismissed as a matter of law pursuant to Fed. R. Civ. P. 56(a).

### B. An inmate does not have a clearly established Eighth Amendment right to continue MOUD after childbirth.

Plaintiff's next claim is that she had an Eighth Amendment right to continue receiving buprenorphine after childbirth. It is undisputed that Plaintiff received a daily, regulated dose of buprenorphine during her pregnancy through NCCIW's medicine-assisted treatment (MAT) program. SUMF ¶¶ 4-5. NCCIW was only authorized to provide MAT for pregnant offenders with Opioid Use Disorder because opioid withdrawal during pregnancy increases the risk of harm to the fetus. SUMF ¶ 3-4. NCCIW was not authorized to provide medication for Opioid Use Disorder (MOUD) to non-pregnant offenders. SUMF ¶ 41. Only a licensed Opioid Treatment Provider can offer MOUD, and NCCIW was not a licensed Opioid Treatment Provider. SUMF ¶ 41. Once Plaintiff delivered her baby and

was no longer pregnant, she was no longer eligible to receive MAT or MOUD. SUMF ¶ 41.

Plaintiff cannot show she has a clearly established constitutional right to receive MOUD under the governing case law. For example, in *Chamberlain v. Va. Dep't of Corr.*, No. 7:20-cv-45, 2020 U.S. Dist. LEXIS 177361 (W.D. Va. 2020), a Virginia inmate alleged that he suffered from OUD and the denial of medication assisted treatment for OUD by the correctional facility constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *Chamberlain,* 2020 U.S. Dist. LEXIS 177361, at *4. The plaintiff alleged that other inmates, including those in local jails, halfway houses, on parole, probation and supervision, were permitted to receive MOUD but he was not. *Id.* at *4-5. The district court observed that the plaintiff was receiving routine medical treatment and monitoring in the prison, and deferred to the prison system's individualized assessment of the inmate's medical needs. *Id.* at *15.

Here, Plaintiff makes a similar claim. She asserts that some inmates (i.e., pregnant inmates, including herself) were eligible for MOUD but that, following childbirth, she was no longer eligible to receive this medical treatment. However, like the plaintiff in *Chamberlain*, Plaintiff was under close monitoring of her physical and mental health needs before, during, and after her pregnancy. SUMF ¶¶ 1-5, 11-15, 26, 39-49. This Court should defer to NCCIW's assessment of Plaintiff's medical needs and dismiss Plaintiff's claims against Defendants in their individual capacity on qualified immunity grounds.

Defendants have not violated Plaintiff's Eighth Amendment rights, and certainly did not show deliberate indifference or a culpable state of mind in tapering her opioid

medication following childbirth. Defendants are entitled to qualified immunity and this claim should be dismissed.

### C. An inmate does not have a clearly established Eighth Amendment right to specific mental health treatment postpartum.

Defendant is unaware of any case law specifically addressing an offender's constitutional right to postpartum care in the correctional setting. Accordingly, Plaintiff is unlikely to demonstrate that some clearly established right was violated when she was monitored and treated for postpartum depression and anxiety in the acute and subacute postpartum periods.

The record evidence demonstrates that Plaintiff was monitored both at the hospital and at the NCCIW infirmary for any physical or mental health needs related to her pregnancy, including the postpartum period. SUMF ¶¶ 36-37, 39, 42-49. Plaintiff received routine and appropriate care, as evidenced by both the medical records and her own presentation. SUMF ¶¶ 39-49. "Inmates are not entitled to their preferred course of treatment. *Annarelli v. Clark*, No. 7:20-cv-261, 2021 U.S. Dist. LEXIS 188505, at *12 (W.D. Va. Sep 30, 21) (citing *Hixson v. Moran,* 1 F.4th 297, 302-03 (4th Cir. 2021). Where the evidence shows that a plaintiff was under the supervision and care of medical professionals, "'[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Hixson*, 1 F.4th at 302-03. An Eighth Amendment violation is more than mere negligence. *Id.* at 303. This case does not present exceptional circumstances warranting a novel decision by this Court that an individual defendant is liable for not providing the specific postpartum care an

inmate demands. Instead, this Court should find that there are no genuine issues of material

fact with regard to Plaintiff's postpartum treatment and that Defendants are entitled to

judgment as a matter of law. Defendants are entitled to qualified immunity and, like

Plaintiff's other Eighth Amendment claims, this claim should be dismissed. *See Table 1C*.

| Table 1C | | | |
|---|---|---|---|
| **SUMMARY OF PLAINTIFF'S CLAIMS** | | | |
| **Defendant** | **Official Capacity** | **Individual Capacity** | **Claims** |
| DPS Secretary Ishee | X | | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD<br>• ADA violation for denial of MOUD<br>• Rehabilitation Act violation for denial of MOUD<br>• ADA violation for denial of mental health treatment postpartum<br>• Rehabilitation Act violation for denial of mental health treatment postpartum |
| Benita Witherspoon | | X | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD |
| Warden Perry | X | | • Eighth Amendment violation for shackling<br>• Eighth Amendment violation for denial of MOUD |
| Dr. James Alexander | X | X | • Eighth Amendment violation for denial of MOUD |
| Dr. Gary Junker | X | X | • Eighth Amendment violation for denial of MOUD |
| Dr. Elton Amos | X | X | • Eighth Amendment violation for denial of MOUD<br>• Eighth Amendment violation for denial of mental health treatment postpartum |
| Kavona Gill | | X | • Eighth Amendment violation for shackling |
| Tamara Brown | | X | • Eighth Amendment violation for shackling |
| Nikitia Dixon | | X | • Eighth Amendment violation for shackling |
| Tammy Williams | | X | • Eighth Amendment violation for shackling |
| Shelda Brodie | | X | • Eighth Amendment violation for shackling |
| Tianna Lynch | | X | • Eighth Amendment violation for shackling |
| Lorafaith Ragano | | X | • Eighth Amendment violation for shackling |
| Legend: Claim is barred by Eleventh Amendment immunity<br>Claim is barred by qualified immunity | | | |

### III. Even Viewing the Evidence in the Light Most Favorable to Plaintiff, Plaintiff's Eighth Amendment Claims Fail on their Face.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. It imposes upon prison officials the duty to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The Fourth Circuit utilizes the two-part inquiry to determine whether prison officials violate their duty under the Eighth Amendment to provide humane conditions of confinement. *Williams v. Branker*, 462 F. App'x 348, 353 (4th Cir. 2012). First, the inquiry asks whether the conditions of confinement objectively inflict harm. *Id.* (citing *Farmer*, 511 U.S. at 834). Second, the inquiry asks whether prison officials subjectively acted with deliberate indifference to an inmate's health or safety, that is, with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The deliberate indifference standard "sets a high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Mere negligence is not enough to meet this bar; rather, the treatment of an inmate "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Spann v. Perry*, No. 1:18-cv-175-MOC-WCM, 2021 U.S. Dist. LEXIS 68755, at *48-49 (W.D.N.C. Apr. 8, 2021) (internal quotations and citations omitted), *aff'd,* 2022 U.S. App. LEXIS 26351 (4th Cir. 2022). Plaintiff cannot meet this burden.

First, the record evidence does not establish that the conditions of Plaintiff's confinement objectively inflicted harm. *See Williams*, 462 F. App'x at 353. SUMF ¶¶ 35, 43, 47, 49. Second, there is no evidence whatsoever that Defendants were deliberately

indifferent to Plaintiff's health or safety. Rather, the Defendants' conduct reflects respectful and compassionate adherence to policies designed to promote the safety and wellbeing of offenders, correctional officers, and the public. SUMF ¶¶ 1-10, 13-20, 27-29, 32-35, 39-49.

Even if Plaintiff's Eighth Amendment claims were not barred by Eleventh Amendment immunity and qualified immunity, they fail as a matter of law. Summary judgment for Defendants is proper.

**IV.    Plaintiff's ADA and § 504 Claims Also Fail as a Matter of Law.**

There is no support for Plaintiff's claims under the ADA or the Rehabilitation Act under the governing law. First, as explained above, Plaintiff's ADA claim is brought against Defendant Ishee in his official capacity and is barred by Eleventh Amendment immunity. *See* § I *supra.* Even if the DPS Secretary was not entitled to Eleventh Amendment immunity, Plaintiff cannot establish that the denial of MOUD or her allegedly insufficient postpartum care violated either federal statute.

The elements of a claim under either the ADA or § 504 of the Rehabilitation Act are the same. Plaintiff must establish that she (1) has a disability, (2) is otherwise qualified for the benefit in question, and (3) that she was denied the benefit solely on the basis of her disability. *See, e.g., Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).

As to NCCIW's policy to discontinue buprenorphine after Plaintiff was no longer pregnant, Plaintiff fails to forecast evidence demonstrating the elements of either an ADA or § 504 claim. Plaintiff did not qualify for continued MAT because she was no longer

pregnant, not because she had a disability. *See id.* Pregnancy is not a disability. *See Parker v. Children's Nat'l Med. Ctr., Inc.*, ELH-20-3523, 2021 U.S. Dist. LEXIS 235885, at *36 ("With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA.") (citations omitted). Indeed, the fact that Plaintiff received buprenorphine while she was pregnant undermines her claim that she was denied MAT because of her OUD disability. *See Chamberlain v. Va. Dep't of Corr.*, 2021 U.S. Dist. LEXIS 170554, at *33 (granting summary judgment for defendants and noting that plaintiff's acknowledgement that some individuals with OUD (e.g., pregnant inmates) received MAT undermined his claim that defendants denied him MAT because of his OUD).

Medical providers and correctional staff at NCCIW complied with all applicable laws, policies, and authorized treatment options for OUD in the correctional setting at the time of Plaintiff's incarceration. Defendants provided daily medication throughout the course of her pregnancy, provided consistent physical and mental health check-ups, prescribed and provided appropriate medications, and monitored and treated her for any symptoms or discomfort she experienced as the result of her pregnancy, OUD, and mental health conditions.

Plaintiff does not aver that she did not receive medical care; she simply asserts that she did not receive her preferred medical care in the form of continued buprenorphine. "An inmate's medical treatment or lack of medical treatment, however, does not give rise to an ADA claim." *Id.* Even where a treating physician agrees that a plaintiff's preferred medication might be appropriate for the plaintiff "in the right setting," if that physician determines the medication is not medically necessary, no claim under the ADA or § 504

exists. *Id.* at *34. "[D]isagreement with a reasoned medical judgment is not sufficient to state a disability discrimination claim." *Id.* at *33 (entering summary judgment for defendants on plaintiff's ADA claim that he is not receiving the "proper" or preferred treatment for opioid use disorder).

Plaintiff also received mental health services postpartum, despite her allegations of inadequate postpartum mental health care. SUMF ¶¶ 46-49. The record evidence demonstrates that she was treated appropriate and received all forms of treatment that her clinicians deemed medically necessary. SUMF ¶¶ 46-49. Accordingly, the denial of medical care (assuming care was denied) is not based on Plaintiff's disability but rather on the medical necessity of the treatment. *Id. See also Koon v. North Carolina,* 50 F.4th 398, 416 (4th Cir. 2022) (finding prison officials did not violate the ADA with deliberate indifference and therefore plaintiff was not entitled to a jury trial).

Again, Plaintiff's claims under the ADA and § 504 of the Rehabilitation Act merely assert disagreements with the medical decisions and care provided, but do not actually equate to a violation of law. These claims should be dismissed both on qualified immunity grounds and because Plaintiff has failed to state a claim for relief under either statute. *See Table 1D.*

| Table 1D | | | |
|---|---|---|---|
| **SUMMARY OF PLAINTIFF'S CLAIMS** | | | |
| **Defendant** | **Official Capacity** | **Individual Capacity** | **Claims** |
| DPS Secretary Ishee | X | | • ~~Eighth Amendment violation for shackling~~<br>• ~~Eighth Amendment violation for denial of MOUD~~<br>• ~~ADA violation for denial of MOUD~~<br>• ~~Rehabilitation Act violation for denial of MOUD~~<br>• ~~ADA violation for denial of mental health treatment postpartum~~<br>• ~~Rehabilitation Act violation for denial of mental health treatment postpartum~~ |
| Benita Witherspoon | | X | • ~~Eighth Amendment violation for shackling~~<br>• ~~Eighth Amendment violation for denial of MOUD~~ |
| Warden Perry | X | | • ~~Eighth Amendment violation for shackling~~<br>• ~~Eighth Amendment violation for denial of MOUD~~ |
| Dr. James Alexander | X | X | • ~~Eighth Amendment violation for denial of MOUD~~ |
| Dr. Gary Junker | X | X | • ~~Eighth Amendment violation for denial of MOUD~~ |
| Dr. Elton Amos | X | X | • ~~Eighth Amendment violation for denial of MOUD~~<br>• ~~Eighth Amendment violation for denial of mental health treatment postpartum~~ |
| Kavona Gill | | X | • ~~Eighth Amendment violation for shackling~~ |
| Tamara Brown | | X | • ~~Eighth Amendment violation for shackling~~ |
| Nikitia Dixon | | X | • ~~Eighth Amendment violation for shackling~~ |
| Tammy Williams | | X | • ~~Eighth Amendment violation for shackling~~ |
| Shelda Brodie | | X | • ~~Eighth Amendment violation for shackling~~ |
| Tianna Lynch | | X | • ~~Eighth Amendment violation for shackling~~ |
| Lorafaith Ragano | | X | • ~~Eighth Amendment violation for shackling~~ |
| Legend: Claim is barred by Eleventh Amendment immunity<br>Claim is barred by qualified immunity<br>~~No genuine dispute of material fact exists and claim fails as a matter of law~~ | | | |

## V.     Many of Plaintiff's Requests for Relief Fail as a Matter of Law.

Even if Plaintiff could present evidentiary and legal support for her claims, which Defendants do not concede, she would not be entitled to much of the relief she seeks from this Court. Even in the event the Court does not grant Defendants' motion for summary judgment, it should limit the damages Plaintiff may be allowed to pursue at trial.

### A. Plaintiff cannot recover compensatory or punitive damages under the ADA or the Rehabilitation Act.

Punitive damages are not available under the ADA or the Rehabilitation Act. *See, e.g., Barnes v. Gorman,* 536 U.S. 181, 189 (2002). Monetary damages for ADA or Rehabilitation Act violations are not routinely awarded either, since plaintiffs can only recover compensatory damages if they prove that public officials intentionally discriminated against them because of their disability. *See, e.g., Koon,* 50 F.4th at 400. Without forecasting any evidence that Defendants intentionally discriminated against Plaintiff in violation of the ADA or § 504, Plaintiff cannot recover any compensatory damages.

### B. Plaintiff's requests for injunctive relief are moot.

In addition to the declaratory judgments, damages and attorneys fees Plaintiff seeks, which the law does not support, Plaintiff also asks for injunctive relief. Plaintiff's requests for injunctive relief are moot for several reasons.

First, DAC policy and North Carolina state law, modified since the commencement of Plaintiff's Complaint, already prohibit shackling during the second and third trimester of pregnancy, during labor and delivery, and during the postpartum recovery period.

N.C.G.S. § 148-25.2(a), amended by HB 608/SL 2021-143. Moreover, Plaintiff is no longer incarcerated at NCCIW and is no longer pregnant or in her post-partum recovery period, and so lacks standing. *See Stafford v. Baker*, 520 F. Supp. 3d 803, 813 (E.D.N.C. 2021); *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (holding that, "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). The requisite personal interest that must exist at the commencement of the litigation, i.e., standing, must continue throughout the litigation or the claims become moot. *Stafford*, 520 F. Supp. 3d at 813. *See also SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017) ("A claim is moot when the parties lack a legally cognizable interest in the outcome.").

Finally, federal courts must ensure the framing of injunctive relief does not extend beyond those "required by the precise facts" of a Plaintiff's claim. *Stafford*, 520 F. Supp. 3d at 813 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000)). Where there is no effective relief that the plaintiff has not already received, her claim is moot. *Id.* (citing *SAS*, 874 F.3d at 389)).

Plaintiff's requests for injunctive relief are moot and should be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the reasons outlined above, Defendants respectfully pray that the Court enter summary judgment in favor of Defendants and dismiss Plaintiff's Second Amended Complaint with prejudice.

Respectfully submitted this the 17th day of November, 2023.

JOSHUA H. STEIN
Attorney General

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General
N.C. State Bar #45005
Email: lmchenry@ncdoj.gov

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
N.C. State Bar #43167
Email: orodriguez@ncdoj.gov

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General
N.C. State Bar #22360
Email: jtrachtman@ncdoj.gov

N.C. Department of Justice
9001 Mail Service Center
Raleigh, North Carolina 27699-9001
Telephone: (919) 716-6540

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law does not exceed 8400 words, in compliance with L.R.7.2(f)(3)(A). Based on the word count generated by the word processing software used to draft it, the foregoing memorandum contains 7323 words.

This 17th day of November 2023.

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General