IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CT-3270-D

| | | |
|---|---|---|
| TRACEY EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ERIK HOOKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on Plaintiff's second motion for sanctions, [DE-134], to which Defendants filed a response, [DE-167], and Plaintiff filed a reply with leave of court, [DE-177]. Plaintiff also filed a notice of supplemental information, to which Defendants filed a response. [DE-239, -241]. The court held a telephonic hearing on the motion on March 11, 2024, and heard argument from counsel for the parties. For the reasons that follow, the motion for sanctions is denied.

I.  **Standard of Review**

Rule 37(b) provides that when a party fails to obey an order to provide or permit discovery, the court "may issue further just orders" that may include the following sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). "A district court has wide discretion under Rule 37(b)(2) . . . to impose sanctions for failure to comply with discovery orders." *Jackson v. Vance Cnty.*, No. 5:97-CV-103-BO, 1997 WL 906015, at *1 (E.D.N.C. Nov. 26, 1997) (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richard & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989)); *King v. CMH Homes, Inc.*, 5:16-CV-693-D, 2017 WL 3037479, at *2 (E.D.N.C. June 21, 2017), *adopted by*, 2017 WL 3034269 (E.D.N.C. July 17, 2017). "[I]n 'determining what sanctions to impose under Rule 37,' a district court must consider four factors: '(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.'" *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citations omitted); *Doe v. Putney*, No. 3:18-CV-00586-RJC-DSC, 2022 WL 3335774, at *8 (W.D.N.C. Aug. 12, 2022). Further, the court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 26(g)(3) provides for sanctions for an improper certification of discovery responses. The committee notes explain that "Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26, Adv. Comm. Note, 1983 Amends. If a certification is improper, the court must award sanctions against the signer, the party, or both, which may include a fee award. Fed. R. Civ. P. 26(g)(3).

Finally, Rule 37(e) governs the court's power to sanction a party for failing to preserve ESI.

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e); *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017). The court may defer ruling where the extent of the harm is indeterminable before trial. *See NuVasive, Inc. v. Kormanis*, No. 1:18-CV-282, 2019 WL 1171486, at *16 (M.D.N.C. Mar. 13, 2019), *adopted by*, 2019 WL 1418145 (M.D.N.C. Mar. 29, 2019).

## II. Discussion

This case concerns the propriety of shackling Plaintiff, an inmate at the North Carolina Correctional Institution for Women ("NCCIW"), at various times during her transport to the hospital to give birth, hospital stay, transport back to the institution, and post-partum recuperation period, as well as the post-partum medical treatment Plaintiff received at NCCIW related to her opioid addiction.

On November 28, 2022, the court allowed in part Plaintiff's motion to compel, identifying multiple, glaring deficiencies in Defendants' discovery responses, and ordered Defendants to supplement their responses. [DE-88]. On February 14, 2023, Plaintiff filed a motion for sanctions asserting that Defendants failed to comply with the court's November 28 order on the motion to compel and failed to adequately prepare Rule 30(b)(6) witnesses for NCCIW on designated topics. [DE-97]. After a hearing on the motion, the court found that Defendants had not fully complied with the court's November 28 order and had failed to adequately prepare the 30(b)(6) witnesses. [DE-127]. Specifically, the court found that "written communications between NCCIW and DPS regarding relevant policies and MOUD, earlier versions of policies, and training for nurses related to MOUD" should have been produced pursuant to the court's November 28 order. *Id.* The court ordered Defendants to produce all remaining responsive documents, allowed Plaintiff to reopen 30(b)(6) depositions at Defendants' expense, and declined to order issues sanctions but awarded $40,077.97 in monetary sanctions. [DE-127, -284]. Discovery concluded on June 27, 2023, and summary judgment motions have been filed and fully briefed.

On July 18, 2023, Plaintiff filed the instant motion asserting that Defendants failed to comply with their discovery obligations and the court's sanctions order and asked the court to hold Defendants in contempt, award costs and attorney's fees related to bringing the motion, order the jury to make certain inferences, strike Defendants' Seventh Affirmative Defense,[1] and preclude Defendants from using certain evidence. [DE-134]. Specifically, Plaintiff asserts that Defendants

---

[1] The Seventh Affirmative Defense is that "[a]t all times relevant to the matters set forth in the complaint, Answering Defendants, acted reasonably, in good faith, and complied with all pertinent constitutional, statutory and regulatory authority, all of which are pled as a complete defense to the Plaintiff's claims asserted in this action." Answer [DE-53] at 34.

4

spoliated evidence, failed to conduct searches for documents responsive to discovery requests as ordered by the court, and failed to properly prepare their 30(b)(6) designees.[2]

The court previously ordered the production of (1) email communications between NCCIW and DPS officials regarding relevant policies; (2) NCCIW shackling policies; (3) training records; (4) communications related to Ms. Edwards and/or the creation of the medications for opioid use disorder ("MOUD") program at NCCIW; and (5) all versions of the NCCIW policies that Plaintiff's counsel requested by name from defense counsel on August 9, 2022 and November 21, 2022. [DE-127] at 3–4. Plaintiff argues that some of this evidence is spoliated, some is likely spoliated due to failure to issue a litigation hold, and counsel improperly certified the discovery responses because Defendants and counsel did not make a reasonable search for all responsive documents.

### A. Emails Regarding Relevant Policies

Plaintiff asserts that Defendants confirmed relevant communications existed, Plaintiff's counsel requested that Defendants' counsel conduct any necessary search for responsive communications between NCCIW and DPS related to policy changes and provided search parameters, and the emails, which are relevant to prove Defendants' knowledge at the time they failed to update their policies, have not been produced. Pl.'s Mem. [DE-136] at 6.[3] Defendants contend that they ran the searches requested by Plaintiff and produced all responsive documents. Defs.' Resp. [DE-167] at 3–5.

At the hearing, Plaintiff indicated that some of the responsive emails may have predated the period that still exists on the server, which was believed to be two years, and Defendants ran

---

[2] Plaintiff clarified at the hearing that she did not seek specific relief related to the 30(b)(6) depositions and that this issue was raised to highlight the deficient document production.

[3] The page number in the CM/ECF footer is referenced where, as here, it differs from the document's internal page number.

5

the searches on the individual defendants' emails but not other appropriate custodians. However, Defendants clarified that their systems do not automatically purge so that emails from the relevant time would still be accessible, and Defendants offered to again attempt to find the perceived "missing" responsive documents if Plaintiff would provide more specificity that would allow Defendants to track them.

As one court aptly put it, "Plaintiff is not entitled to every single document that could possibly have existed. Discovery must be reasonable, not perfect." *Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17-CV-1019, 2020 WL 7133806, at *10 (M.D.N.C. Dec. 4, 2020) (quoting *Johnson v. L'Oreal USA*, No. 18-CV-9786, 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020)), *adopted by*, 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021). The state's centralized IT department ("NCDIT") ran the requested search terms and the responsive documents were produced. Defense counsel emailed Plaintiff's counsel a list of search terms and custodians, and Plaintiff's counsel agreed to start with those parameters and engage in further discussions as needed. Defs.' Ex. A [DE-167-1]. Plaintiff has not provided the name of any specific custodian that Defendants refused to search. Furthermore, based on defense counsel's statement that none of the relevant systems had been purged, the court cannot find that information was lost because Defendants failed to take reasonable steps to preserve the ESI, as required for the imposition of sanctions for failing to preserve ESI under Fed. R. Civ. P. 37(e). However, to the extent Plaintiff can provide Defendants with additional specificity regarding any document believed to be missing, Defendants have offered to attempt again to locate it. Accordingly, the court denies the motion for sanctions as to emails.

6

### B. All Versions of Relevant Policies

Plaintiff asserts that Defendants failed to produce all relevant policies or all versions of relevant policies, despite Plaintiff telling Defendants several times the specific policies that were requested but not provided. Pl.'s Mot. [DE-136] at 6. Defendants conceded that, in responding to the motion, they discovered certain documents had not been included in an earlier production, and they remedied the error. Defs.' Resp. [DE-167] at 5. At the hearing, Plaintiff indicated that as far as she knew all versions of relevant policies had now been produced. The court finds the failure to produce certain documents was inadvertent, did not prejudice Plaintiff, and does not warrant the requested issues sanctions.

### C. Training Documents

Plaintiff asserts that Defendants did not produce training materials from the relevant time frame (2019), they did not produce shift narratives that would note training, and they did not produce MOUD training materials for nurses that Dr. Amos testified existed. Pl.'s Mem. [DE-136] at 7. Defendants admit they produced the wrong version of the training materials, and they have since corrected that error. Defs.' Resp. [DE-167] at 5–6 & Ex. D [DE-153-4]. Defendants also indicate that they produced the shift narratives from November 2019, but contest that all of the shift narratives requested were relevant and assert that such a production would be voluminous and disproportionate to the needs of the case because it is unlikely it would produce responsive information. *Id.* at 6. Finally, Defendants dispute Plaintiff's reading of Dr. Amos's testimony and assert that no further training materials exist. *Id.* at 6–7.

At the hearing, Plaintiff indicated most of what had been requested was produced, and Defendants confirmed that all shift narratives for November 2019 had been produced. Defendants also stated that a record of who was trained was provided but there are no "training materials" to

7

produce because training was conducted "face-to-face" when corrections officers reported for shift.

Defendants have provided the training materials for 2019. The court finds the failure to provide the correct training materials was inadvertent and does not warrant the requested issues sanctions. The court also finds Defendants' production of shift narratives for November 2019, the relevant time period of the events at issue, is sufficient to satisfy the court's prior order. Given the description of what is contained in the shift narrative, there is little chance of prejudice to Plaintiff by not producing these documents for a broader period and the burden on Defendants would outweigh any benefit. The court also agrees with Defendants that Dr. Amos testified that there was a record of "who was trained," [DE-135-5] at 119:2–16, not that there were additional MOUD training materials for nurses. Accordingly, the court denies the motion for sanctions as to the shift narratives and MOUD training materials for nurses.

### D. MOUD Documents

Plaintiff asserts that Defendants did not produce minutes from meetings where MOUD was discussed that are known to exist from deposition testimony and that custodians did not search for responsive documents during the relevant time period. Pl.'s Mem. [DE-136] at 7–8. Defendants contend that they produced all relevant documents for MOUD and MAT (medication assisted treatment), all emails were searched by NCDIT for the relevant period even if the individual custodians did not search the whole period, and deponents testified that meeting minutes were many times not taken but if they did exist they were disseminated by email and would have been produced in the results of the NCDIT search. Defs.' Resp. [DE-167] at 7–8. At the hearing, Plaintiff indicated she was specifically looking for meeting minutes that Witherspoon testified she

8

typed up. Defendants explained that Witherspoon testified that any minutes were disseminated by email, and NCDIT's email search would have captured any such responsive emails.

As explained above, discovery need not be perfect, and Defendants have performed a reasonable search sufficient to satisfy their obligation under the court's prior order. However, to the extent Plaintiff can provide Defendants with additional specificity regarding any document believed to be missing, Defendants have offered to attempt again to locate it.

### E. Spoliation

Plaintiff learned on June 1, 2023 that no litigation hold was issued despite the filing of the lawsuit in September 2021. Pl.'s Mem. [DE-136] at 8. Plaintiff contends that audits and correspondence from the state stored within NCCIW's Correspondence Tracking System ("CTS"), which only contained audits going back two years, and documents stored on the former warden Witherspoon's computer were spoliated as a result of the failure to implement a litigation hold. *Id.* at 8–9. Based on discovery produced after the order on the first motion for sanctions, Plaintiff believes that the 2019 and 2020 audits would have shown that the prison's shackling policies failed to comply with state policy. *Id.* at 9. Plaintiff asserts that although she has strong evidence to support her claims, written proof that the state had informed relevant Defendants that the shackling policy violated state policy and could harm pregnant prisoners, and written proof that NCCIW's response was inadequate, would likely be highly compelling to a jury. *Id.* Furthermore, Plaintiff contends that Witherspoon testified she had responsive documents on her computer but the computer was no longer available to search. *Id.* Defendants contend that Plaintiff is speculating that the evidence would have been favorable, Plaintiff mischaracterized testimony about how long documents are stored in CTS, and that there is no evidence of intent or willfulness on the part of Defendants. Defs.' Resp. [DE-167] at 8–10.

9

The documents Plaintiff contends were spoliated are ESI, which is governed by Rule 37(e). The Fourth Circuit has explained that a showing of prejudice is sufficient to warrant sanctions.

> Under Rule 37(e), when "electronically stored information that should have been preserved ... is lost because a party failed to take reasonable steps to preserve it," then "upon finding prejudice to another party from loss of the information," the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Accordingly, only a finding of prejudice is required for such not-greater-than-necessary sanctions. But where the spoliator "acted with the intent to deprive another party of the information's use in the litigation," the court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

*Wall v. Rasnick*, 42 F.4th 214, 222 (4th Cir. 2022).

At the hearing, Defendants conceded a litigation hold was not issued but explained that one was not necessary because the NCCIW systems do not automatically purge, the audit Plaintiff believed to be spoliated did, in fact, exist and counsel determined it contained no responsive information, and any responsive information on Witherspoon's computer would have been captured by the NCDIT search.

Spoliation of evidence is "the destruction or material alteration of evidence or ... the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (further citation omitted)). Based on statements at the hearing, the court finds that the audit Plaintiff believed to be spoliated was preserved and was simply not responsive. As for information from Witherspoon's computer, Defendants contend it was preserved and searched by NCDIT, but Plaintiff believes based on Witherspoon's testimony that responsive meeting notes existed but were not produced. Before a court may impose sanctions pursuant to Rule 37(e), four threshold requirements must be established: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to

preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery. *Eshelman*, 2017 WL 2483800, at *4; *In re: Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016). The court cannot find that the perceived loss of the meeting notes was based on Defendants' failure to take reasonable steps to preserve the ESI. Accordingly, sanctions for spoliation are not warranted.

### F. Expenses and Attorney's Fee Request

Plaintiff seeks an award of expenses and attorney's fees associated with bringing this motion. Pl.'s Mot. [DE-134] at 1. Although the court has not found for Plaintiff regarding the issues raised in the motion, at the hearing Defendants conceded that they had produced information responsive to the court's prior sanctions order after the filing of the motion.

When a party fails to comply with a court order, the court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Since the filing of this motion, the court has entered a sizeable discovery sanctions award against Defendants. [DE-284]. The late production of the documents at issue here was inadvertent, and the most serious allegations of spoliation proved to be without merit. Given these circumstances, the court in its discretion finds a further award of attorney's fees and expenses is unwarranted.

### III. Conclusion

For the reasons stated herein, the motion for sanctions is denied.

SO ORDERED, the 15th day of March, 2024.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

11

Case 5:21-ct-03270-D  Document 313  Filed 03/15/24  Page 11 of 11